THE INSURANCE COMPANY OF NORTH AMERICA

*v.*

McDOWELL & BROWN.

THE MERCHANTS' INS. CO. OF CHICAGO *v.* THE SAME.

LUMBERMAN'S INSURANCE COMPANY *v.* THE SAME.

1. INSURANCE—*of an over valuation.* Where a policy of insurance is silent in regard to an over valuation of the property insured, the statement of the value of the property in the application for insurance, is not one which the assured warrants to be true ; and where the agent knows, or can judge of the value of the property himself, and accepts an application without objection to the statement therein of the value, even if such valuation is higher than it should be, it will not vitiate the policy.

2. But an over estimate of the value of the property by the owner in his application, is a circumstance which may be considered, in connection with others, to show that the owner destroyed the property for the purpose of defrauding the company, where that is relied upon as a defense.

3. SAME—*of notice of application—what deemed sufficient notice.* Where it is one of the conditions of a policy that the application must be sent to the Secretary at Chicago, before any risk can be assumed,—an indorsement upon the application, "Authorized, Nov. 5th, 1866, at 4 per cent.," is proof of such notice. And a subsequent recognition of the validity of the policy, by receiving the premiums, and sending an agent to investigate the loss, is an estoppel to an objection raised on that ground.

4.  Same—*of failure to endorse consent on policy to effect other insurance—incumbrances.*  Where several policies of insurance were effected with one person, acting as the agent of the several companies, the object and purpose of endorsing consent on the policy was fully secured.  And an endorsement upon the policies, that the loss, if any, would be paid to persons holding the incumbrances, was notice of such incumbrances, and the companies cannot avail themselves of the negligence, if any, of their agents, as against the *bona fide* assured.

5.  Same—*increased hazard from repairs—effect of.*  An increase of hazard only suspends the policy while it continues; the liability is restored when the increased hazard terminates.

6.  Policy of Insurance—*of the time of commencing suit.*  Where the policy provides that the company shall have sixty days after notice and proof of loss, within which to pay the loss, suit brought after the prescribed time, with notice and proof of loss incurred, is not premature; and any failure to make timely objections to the sufficiency of such proof would be regarded as a waiver of such objection, if any existed.

7.  Same—*of a substantial compliance with its conditions.*  Where the requirements of the policy of insurance upon a mill do not permit smoking in or upon the premises, or the carrying lights open and exposed, under a penalty of a forfeiture of the policy, it was *held*, that under such conditions the insured undertook only that these violations should not occur with his consent, and that he would use the reasonable diligence of a prudent man to prevent them.

8.  Averment and proof—*variance*—Where the declaration avers the contract to have been made with the Insurance Company of North America, and the proof shows it to have been made with the President and Directors of the company, it was *held*, that the averment stated the obligation under the contract according to its legal effect.

Appeal from the Circuit Court of McLean county; the Hon. John M. Scott, Judge presiding.

The facts are fully presented in the opinion.

Messrs. Hatch & Slade and Messrs. Weldon & McNulty, for the appellants.

Where, by the policy, the application and the survey, and conditions annexed, are made a part of the contract, so far as they relate to the property insured, they must be true, or the policy will be void.  *Howard Fire and Marine Ins.*

*Co.* v. *Cornick et al.*, 24 Ill. 461; *New England Fire and Marine Ins. Co.* v. *Wetmore et al.*, 32 Ill. 243, 244.

In *Herron* v. *Peoria Marine and Fire Ins. Co.*, 28 Ill. 238, this Court says · " They (the representations in the application) are subject to attack by defendant, and if he shows their falsity, if material, the assured cannot recover."

We contend that anything is " material" to a risk which, if known to the insurance company, would have induced it to ask a higher rate of premium, or to reject the risk altogether. *Columbian Ins. Co.* v. *Lawrence*, 10 Pet. (U. S.) 507; *Columbian Ins. Co.* v. *Lawrence*, 2 Pet. 25.

It has elsewhere been decided that an inquiry made by insurer shows that the company deems the matter inquired about material; an answer by the assured admits the materiality. *Wilson* v. *Conway Ins. Co.*, 4 R. I. 141; and a false representation of a material fact avoids the policy, whether made by mistake or design, the effect on the company being the same, where the company, as in this case, gets all its information from the application. *Carpenter* v. *American Ins. Co.*, 1 Story, (C. C. U. S.) 57.

The covenant at the end of the application includes incumbrances, as showing the insurable interest of the insured. If all incumbrances are not set forth, the policy is void. *Richardson* v. *Maine Ins. Co.*, 46 Maine 394; *Hutchins* v. *Cleveland Mutual Ins. Co.*, 11 Ohio St. 477; *Bowditch Mutual Fire Ins. Co.* v. *Winslow*, 3 Gray 415. See same case reported again in 8 Gray, 38. *Patten* v. *Merchants and Farmers' Mutual Fire Ins. Co.*, 38 N. H. 338. See also *Battles* v. *York County Mutual Ins. Co.*, 41 Maine, where a discrepancy of one hundred dollars between the existing mortgage and that set out in the application rendered the policy void. *Lowell* v. *Middlesex Mutual Fire Ins. Co.*, 8 Cush. 127; *Haywood* v. *New England Mutual Ins. Co.*, 10 Cush. 444; *Brown* v. *Peoples' Mutual Ins. Co.*, 11 Cush. 280; *Packard* v. *Agawam Mutual Fire Ins. Co.*, 2 Gray 334.

An inadvertent omission to state all material facts, *especially* where the application is the only information the company has by which to judge the risk, avoids the policy. *Beebe* v. *Hartford Mut. Ins. Co.*, 25 Conn. 51 ; *Dennison* v. *Thomaston Mut. Ins. Co.*, 20 Maine, 125 ; *N. Y. Bowery Ins. Co.* v. *N. Y. Fire Ins. Co.*, 17 Wend. N. Y. 359 ; *Carpenter* v. *American Ins. Co.*, 1 Story C. C. U. S. 57.

One condition of the policy is, that if the assured " shall have or hereafter make any other insurance on the property herein insured, or any part thereof, without notice to and *consent of this company in writing,* this policy shall be null and void."

Notice to and knowledge on the part of the agent is not a compliance with the condition requiring consent in writing. *Worcester Bank* v. *Hartford Fire Ins. Co.*, 11 Cush. 265; *Tate* v. *Citizens' Mut. Fire Ins. Co.*, 13 Gray, 79; *Mellen* v. *Hamilton Fire Ins. Co.*, 5 Duer. N. Y. 101, affirmed in 17 N. Y. 609 ; *Battain* v. *Merchants' Ins. Co. of N. O.* 3 Rob. La. 384 ; *Forbes* v. *Agawam Mut. Ins. Co.*, 9 Cush. 470 ; *Conway Tool* v. *Hudson River Ins. Co.*, 12 Cush. 144 ; *Burt* v. *Peoples' Mut. Ins. Co.*, 2 Gray, 397 ; *Kimball* v. *Howard Fire Ins. Co.*, 8 Gray, 33 ; *Deitz* v. *Mound City Mut. Fire & Life Ins. Co.*, 38 Mo. 85; *Smith* v. *The Ins. Co.*, 24 Penn. St. 320.

Messrs. Packard & Dickinson, for the appellees.

The point is made upon the application being a warranty. We do not controvert the doctrine that it *may* be a warranty, and that it *is*, in certain cases.

The warranty of the owner of the property, as to the truth of his representations, will not be extended beyond what it was evidently intended to embrace by the parties. *Howard Fire and Marine Ins. Co.* v. *Cornick*, 24 Ill. 455; *Atlantic Ins. Co.* v. *Wright*, 22 Ill. 462 ; *Farmers' Ins. and Loan Co.* v. *Snyder*, 16 Wend. 481; 4 Wend. 72.

But it should appear on the face of the policy, and should not be regarded unless inserted in the policy. See *Kentucky Ins. Co.* v. *Southard*, 8 Ben Mon. 637, 639.

The answer in application refers only to lamps generally used, and will be confined to them, as was held in *Howard Ins. Co.* v. *Bruner*, 23 Pa. State Rep. 50.

Smoking was at one time practiced in the mill, to some extent, but as soon as proprietors learned it was not allowed, it was prohibited, and notices put up to that effect. After that, no smoking was done on the premises. *Schmidt* v. *Peoria Marine and Fire Ins. Co.*, 41 Ill. 295.

But the fire did not occur through, or by any of the means negatived by the answers, and covered by the inquiries in the application; and, therefore, taken in their strictest sense, appellees are not thereby prevented from recovering in this case. See *N. E. Fire and Marine Ins. Co.* v. *Wetmore*, 32 Ill. 221 ; *Johnson* v. *Berkshire Ins. Co.*, 4 Allen 388 ; 10 Peters 506 ; 2 Parsons on Contracts, 449.

In all these transactions by the agents of insurance companies relative to other insurance, the act of the agent is the act of the principal, and fully binds him. The later authorities are full and ample upon this point. We cite as conclusive on this point, *N. E. Fire and Marine Ins. Co.* v. *Schettler*, 38 Ill. 169, 170, 171.

Especially is this so when the act to be done is the duty of the agent. *Fulton Bank* v. *N. Y. and Sharon Canal Co.*, 4 Paige 127 ; *Lightbody* v. *North American Ins. Co.*, 23 Wend. 18 ; *New York Central Ins. Co.* v. *Nat. Prot. Ins. Co.*, 20 Barb. 468 ; *Sexton* v. *Montgomery County Mutual Ins. Co.*, 9 Barb. 191. See, also, *McEwen* v. *Montg. Mutual Ins. Co.*, 5 Hill, 101 ; *Bank of United States* v. *Davis*, 2 Hill 51 ; *Sutton* v. *Dillaye*, 3 Barb. 529 ; 8 How. 235 ; *Liscom* v. *Boston Ins. Co.*, 9 Met. 205.

The proofs of loss were sufficient under the rule, and are only held to be made as full and complete as the circumstances of the case would permit. See *Morton* v. *Renssellaer and Saratoga*

*Ins. Co.,* 7 Cowen, 545; also, *McLaughlin* v. *Washington County Mutual Ins. Co.,* 23 Wend. 525; see also what proofs were held sufficient in *Gilbert* v. *N. A. Ins. Co.,* 23 Wend. 43; *Bumstead* v. *Div. Mutual Ins. Co.,* 12 N. Y. (2 Kernan) 81. Nor does the fact that he afterwards, at the request of the company, attempted to make a fuller statement, invalidate the first. See last case cited, 12 New York 81. It is not necessary that the assured should furnish his proofs in such form as is required on the trial of a cause. See 11 Johns. 242; 3 Sandf. 26; *Savage* v. *Com. Exchange Ins. Co.,* 4 Bosw. (New York) 1; 2 Parsons on Contracts 461.

But the proofs being made by the agent of the company, they are bound thereby and cannot now complain.

And if this were not so, their refusal to return them for correction, is an acceptance and waiver. See *Turley* v. *N. A. Fire Ins. Co.,* 25 Wend. 374; *O'Neil* v. *Buffalo Fire Ins. Co.,* 3 N. Y. (3 Comst.) 122.

It is further contended that suit was brought too soon—the policy providing sixty days after proof of loss made, etc. The proofs were made on the 28th day of May, and sent to the home office immediately, and suit was commenced August 20, leaving eighty-three days intervening. This twenty-three days would *seem* to be time enough to send these papers to the home office at Erie, Pa., or to Philadelphia, or to any other reasonable place in the United States, not excluding California. It was certainly a reasonable time, and the proofs having been taken by their agents, and intrusted to their care, that is all they are entitled to. *Beals* v. *Home Ins. Co.,* 26 Barb. 614; 18 Ill. 562.

Mr. Justice Walker delivered the opinion of the Court:

These three cases present substantially the same questions, and will be considered together. There are minor points in one or two not common to the others, but we shall consider in this opinion all of the questions presented by the several

records, which we deem material to their determination. Appellees, in the autumn of 1866, purchased of one Burt, a steam flouring mill, in Minonk, Illinois, for the sum of $4,500, and received a bond for a deed to the property. At the time of their purchase the property was insured for $2,500, in the La Salle County Mutual Insurance Company, which was not assigned, but was canceled. Appellees, on the 2d day of November, 1866, obtained a policy on the property for $2,000, from the Lumberman's Insurance Company; and on the sixteenth day of the same month, a similar policy for $1,500, in the Merchants' Insurance Company. At about this latter date appellees commenced the repair of the mill, and after the improvement was completed, they obtained a policy in the North American Company for $3,000, and another in the Sangamon Insurance Company for $2,500; in all, nine thousand five hundred dollars.

During this time appellees borrowed money of Mrs. McDowell and Joseph Brown, and gave mortgages on the mill to secure its payment, and had given a mortgage to Burt to secure a portion of the purchase money, and of which the insurance companies had notice through their agents. The mill was destroyed by fire on the 20th of May, 1867. The cause thereof is not shown in the record. After notice to the companies, their several general agents met at Minonk and investigated the loss and attending circumstances. After the investigation the agents proposed an arbitration, to which appellees refused to assent. They then promised to pay if appellees would prove that the mill was worth more than the amount for which it was insured. They left blanks for the purpose of making proof, which were filled out by one of the local agents, and, as he swears, duly made and forwarded to the home offices.

It is urged that the mill was over valued at the time the application was made for insurance in these several companies, and that the policies are for that reason void and of no effect. We are at a loss to perceive how such a

statement in the application can be material, provided the risk taken is less than its value, or where the value at the time of loss exceeds the amount covered by the insurance. To hold that an over valuation vitiates a policy, without reference to its value at the time of the loss, would be to hold that a mere diversity of opinion in reference to value, might render a policy obtained in the most perfect good faith, void, simply because the assured had placed a higher estimate on his property than that fixed by his neighbors. As a matter of prudence and precaution against loss, these companies may, and perhaps do, endeavor to avoid insuring property at more than its value, so as to thereby avoid all temptation to carelessness and destruction of the property. But at the same time, there is no law prohibiting such bodies from insuring property at its full, or even an over value. Nor have these companies inserted any condition that an over value shall avoid the policy.

Nor can it be said that where the owner is mistaken in the value of his property, and places it too high in his application, he intended to defraud the company. A survey is generally made by the agent of the company, and if regarded too high, and as a matter of importance, the agent should then object. After examination he can, of course, determine whether he regards the value fixed in the application as too high. In this case the local agent who issued the policies swears that he went through and carefully examined the mill, and we must presume that he had some knowledge of the value of the property, and if it was regarded important by the company to know its value, the agent could have learned it upon inquiry. The agent accepted the application without objection, and received the premiums, and paid them to the companies. It would be unprecedented to permit the companies to receive an application, issue a policy, receive the premium and then say we knew that your policy was void when we received your money, and that whilst you in good faith relied upon the validity of your policy, we knew that we had incurred no risk. And where the agent knows or can

judge of the value of the property, and accepts an application without objection, even if the valuation is higher than it should be, we cannot say that it is so far material as to vitiate the policy.

The valuation is not one of the material statements which the assured warrants to be true. It is, however, a circumstance which may, in connection with others, be considered by a jury in determining whether the assured has destroyed his own property for the purpose of defrauding the company, where that is relied upon as a defense. In the case of the *Peoria Marine and Fire Insurance Company* v. *Lewis*, 18 Ill. 553, it was held that the company was liable to pay the entire loss unless controled by the policy ; and it has never been held, so far as we are aware, that insurance companies are not liable to pay the amount of their risks, simply because the property was over valued, but, from repairs or other causes, had appreciated in value after the risk was taken, so as to become of greater value than the risk when the loss is sustained. They insure to the extent of the sum named, and are liable for that amount if the loss equals or exceeds it.

It is again urged in the case of the policy issued by the Lumberman's Company that it had no notice of the application, and that by one of the conditions of the policy the application was required to be sent to the secretary at Chicago before any risk can be assumed. The application is endorsed, "Authorized Nov. 5, 1866, at 4 per cent." This would seem to be sufficient proof that the notice had been given ; but the company recognized its validity by receiving the premium and sending an agent to investigate the loss, and it is estopped from raising this objection. Again, as to the failure to endorse consent on the policy to effect other insurance, the application for all the policies were made to the same agents, and they delivered the policies to the assured ; and they testify that they notified the different companies of the fact. And it appears the agents entered in the book of the company the fact that other policies were applied for and risks taken. This

answers the object and purpose of endorsing consent on the policy fully and in every respect. The only purpose of such an endorsement is to give notice that other insurance on the same property is desired, and to afford the company an opportunity to object. In this case the companies had notice and no objection was made. Had the application been made to another agent for the policy, it might have presented a different question; but we regard this as a sufficient compliance with the requirement, as it was tantamount to the endorsement.

As to the various incumbrances, the agents were informed of them, and they made the endorsements on the policies that if loss occurred the money would be paid to the persons holding the incumbrances. Thus it appears that the agents had actual notice of both the incumbrances and all the polices, and if they failed to report them to their companies, and afford them an opportunity to cancel the policies, it is the misfortune of those bodies in having negligent agents.

It is likewise insisted that as to a portion of these policies, appellees, by making repairs on the property after the insurance was effected, had violated one of the conditions which prohibited them from doing any act which should increase the hazard. In the case of the *New England Fire and Marine Ins. Co.* v. *Wetmore*, 32 Ill. 245, it was held, that an increase of the hazard only suspended the policy during the continuance of the increased hazard, and when it terminated the liability of the company commenced. This rule was recognized and applied in the case of *Schmidt* v. *The Peoria Marine and Fire Ins. Co.*, 41 Ill. 295. If the hazard was increased by making those repairs, it had fully terminated, and the liability had recommenced long before the fire occurred.

There is no force in the objection that the companies did not have sufficient notice of the loss, as they had such notice as induced them to send their general agents to the place to investigate the loss; any notice that produces such a result is sufficient, without reference to its form or particulars.

9—50th Ill.

There is no question that the notice was promptly given to the local agents, and that must suffice.

There is no force in the objection that these suits were prematurely brought. The companies had thirty days after notice and proof of the loss, within which to determine whether they would rebuild, and sixty days after the proof of loss within which to pay the amount of the insurance. In the case of the *Peoria Marine and Fire Ins. Co.* v. *Lewis, supra,* it was held, under a similar provision, the company became liable to pay at the end of sixty days from the time the proofs were furnished. More than sixty days had transpired after the proofs were furnished and before these suits were brought, and that is all that is required.

It is urged that the proofs are insufficient which were furnished the companies. They directed them to have the proofs made out and taken by their agents, to whom they furnished blanks for the purpose, and the agents returned them to the companies, and they retained them without pointing out specific objections to them. By such action they waived any objections that may have existed. When they refuse to pay, and yet avoid or fail to afford the insured an opportunity to obviate objections, they cannot rely upon objection to such proof on the trial when sued upon the policy.

In one of the cases it is insisted that there was a variance between the name by which it is averred the company contracted, and the evidence on the trial. An examination of the record discloses the fact that it is averred in the declaration that the Insurance Company of North America contracted with appellees, when it is shown the contract was made by the president and directors of the company. The averment states the obligation according to its legal effect, and that must suffice. The legal effect is the same, whether it is said the company made the contract, or that it was made by the president and directors of the company. They both mean the same thing.

It is urged that smoking was allowed in the mill, and that appellees, with others, did so, and that it is in violation of the

conditions of the policy.  In the application it was said that smoking was not allowed.  It appears that at one time there was smoking done in the mill, but as soon as appellees were informed that it was prohibited by the policy it was stopped, and a notice prohibiting it was posted up in the mill.  This was some time before the loss occurred.  In such a case the assured only undertakes that he will not himself do the act, or allow others to do so, if by reasonable precaution he can prevent it.  He does not, by such an answer to the question, whether smoking is permitted, insure that it shall not be done, or that if done he will forfeit his policy.  He only undertakes that it shall not be done with his consent, and that he will use reasonable diligence to prevent it.  *Daniel* v. *Hudson Fire Ins. Co.,* 12 Cush. 426.  When appellees prohibited smoking and posted the notice, they did all that was required of them.

It is again urged that an open light was in use in the mill, when, in the application, appellees had said they were not in use.  It appears that one open kerosene lamp was used in the office of the mill, but it was not used or designed for use in the mill.  The miller says that he used it in the mill on one or two occasions, and that it may have been carried through the mill a few times.  The lights employed in the mill were not open, but were enclosed in glass.  Open lights were not, therefore, in general use in the mill, nor ever used there. We do not see that the proof establishes a violation of this condition of the policy.

It is urged, with much apparent earnestness, that the judgments in these cases should be reversed because the evidence fails to show that the property was of a value equal to the amount of these several policies.  It may be, and no doubt is true, that if appellants' evidence were alone considered, it would fail to prove that it was worth that sum.  But on the other hand, if we were to look alone to that of appellees, it would show it to have been of a larger value than that amount.  And where the entire evidence on that question is

considered, notwithstanding it is conflicting, we are satisfied that it preponderates in favor of a larger value than the entire sum for which the property was insured. We find in this case, as we usually do where a question of value is involved, that opinions of witnesses, doubtless equally honest and intelligent, differ widely. Although the evidence is conflicting, still it is sufficient to sustain the finding of the court below.

After a careful examination of these several records, we are unable to discover any error in either of them requiring a reversal of any one of these judgments, and they are, therefore, affirmed.

*Judgments affirmed.*