Belknap, }
Jan. 3, 1928. }

CHARLES H. WATSON *v.* FIREMEN'S INSURANCE COMPANY.

*Wayne M. Plummer* and *Owen & Veazey* (*Mr. Owen* orally), for the plaintiff.

*Jewett & Jewett* (*Mr. Theo S. Jewett* orally), for the defendant.

PEASLEE, C. J.   In this action to recover upon policies of fire insurance the question presented by the case as transferred is whether there was any evidence from which it could be found that the origin of the fire was a risk insured against. The cause of the fire was an explosion, resultant from pouring gasoline into an automobile tank, by the light of an ordinary kerosene lantern. In the original policies all use of gasoline within the buildings was prohibited. This, under

our decisions, would put the risk outside the policies, whether the insured knew of the use or not. *Badger* v. *Platts*, 68 N. H. 222. The reason for this conclusion is that the risk incident to such use is one that "the defendant expressly refused to assume. . . ." *Wheeler* v. *Insurance Co.*, 62 N. H. 326, 329.

By a subsequent contract, attached to one of the policies, certain uses of gasoline were permitted. The right was given to keep two automobiles in the barn, and stipulations as to such use (called warranties) were a part of the agreement. That involved here reads: "2. That the opening, filling or emptying of any gasolene reservoir of any automobile while the same is contained in the within described building, shall be done by daylight or incandescent electric light only, and that there shall be no other artificial light and no fire or blaze in the room when such reservoir is open. . . ."

Following these provisions is a statement that "This policy shall not be affected by failure of the insured to comply with any of the warranties of this permit in any portion of the premises over which the insured has no control."

It is evident that the contract made differed vitally from those considered in the cases upon which the defendant relies. The dangers incident to certain uses of gasoline were insured against generally; and as to the excluded uses, the defendant undertook the risk if the use was in any portion of the premises over which the plaintiff had no control. The rule that there is no liability when forbidden acts are done by one "in whose possession and control" the premises "have been placed by the insured" *(Liverpool and London and Globe Ins. Company* v. *Gunther*, 116 U. S. 113) is not applicable here.

The act with which the defendant seeks to charge the plaintiff was done by the plaintiff's son, in the plaintiff's absence. But because the plaintiff had the right to determine what should or should not be done upon the premises, it is claimed that he had such control thereof that the act could not be found to be within the terms of the contract of indemnity.

The meaning of the word control, as here used, is a new question in this jurisdiction, and one upon which little authority is to be found elsewhere. The term was evidently chosen deliberately and with an appreciation on the part of the defendant that it has its limitations. Had right of possession or right to control been intended, it is a fair inference that it would have been so stated. Instead thereof the insurer used the term of more limited application, and its rights are to be determined accordingly.

The phrase under consideration is not one having an exact and technical definition, which necessarily excludes any other interpretation; and much depends upon the point of view from which the problem is approached. Looking at the question solely from the insurer's standpoint, and giving to each word used the significance most favorable to that party, there would be ground for the contention that the exception applied only when the insured had formally surrendered possession and authority over the premises for a definite period, that is, when they were held under a lease.

It is hardly necessary to cite authority for the refusal to adopt such a method of interpretation. This was language used by the insurer to the insured. The test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would have understood them to mean. *Fitch Company* v. *Insurance Co.*, 82 N. H. 318, and cases cited. "Men have a right to be dealt with with some regard for the state of mind and body, of knowledge and business, in which they are known actually to exist." *DeLancey* v. *Insurance Co.*, 52 N. H. 581, 590.

The evident purpose of the exception from the terms of the warranties was to relieve the insured, to some extent, from the application of the rule that his non-participation in the forbidden use was immaterial. Such being the object in view, there is fair reason to conclude that the plaintiff would understand that he was insured if the forbidden use should be made "without his fault," as he would express it. This might well be thought to be "the meaning which they [the words] convey to the common mind." *Stone* v. *Insurance Co.*, 69 N. H. 438, 441. Upon such an interpretation of the contract, he was insured against this risk if the act was done without his authority, consent, knowledge, or culpable ignorance. *Insurance Co. of North America* v. *McDowell*, 50 Ill. 120.

If this should be thought to be too broad an application of the proviso, there is, upon the particular facts of this case, other similar ground upon which the defendant's claim of non-liability as matter of law should have been denied. Even taking a schoolman's view of the language, rather than that of the farmer and portable mill operator to whom it was addressed, it does not conclusively appear that the defendant is not liable.

In its ordinary acceptance, control means regulating or directing power. In the sense that, as owner, the plaintiff could have determined in advance what uses the premises should be put to, he had control. Of course this is not what the term means here, for such a

construction would make the stipulation in question wholly nugatory. It plainly contemplates a situation where, for a greater or less period, the plaintiff had given over to another the power to decide what should be done. It applies to parts of the premises as well as to the place taken as a whole. The language is "any portion of the premises." The premises concerning which this additional contract was made consisted of one barn only, and therefore the above phrase must be taken to mean any part of the barn.

There is nothing in the contract requiring the insured to retain control, or to exercise any supervision over the control of others. The plaintiff is not outside his legal rights because he did not do these things. Even if it were to be held that he was bound to take care to prevent forbidden uses which he had reason to anticipate might be made, it would not change the situation here, since there was evidence that there was nothing to lead him to think such an event might occur.

It would be entirely feasible for the plaintiff when surrendering control, as for example by a lease, to stipulate against any acts in violation of the policy and to reserve supervisory authority. But the policy contract does not require this. The thought expressed by the contract is that the plaintiff may give over control to another, in an honest way, and that when this is done the risk incident to the prohibited act is assumed by the insurer.

The exception is not limited to instances where there has been a formal surrender of control, as in the case of a holding under a lease. It does not require that the real estate be out of the legal possession of the owner. It contemplates the presence upon the premises of automobiles owned by third persons, for provision is made as to those belonging to guests. It was made with the expectation that gasoline would be put into cars while in the barn, as the manner in which that might be done is fully described.

There is no stipulation as to the length of time that lack of control must continue. If it existed at the time of the transaction in question it is sufficient. The exception of acts done when the insured had no control shows an intent to protect him to some extent for loss on account of damage done to his property by third persons. It is not dependent upon the length of time during which control by the plaintiff was lacking. If that time was of sufficient duration to permit the doing of the act in question, it was as much within the exception as though it continued indefinitely.

Considered in terms of weeks, months or years, the premises were

under the plaintiff's control. But the transaction in question was a matter of moments. And as the object of the policy was to protect the plaintiff when out of control, elapse of time is unimportant, if it be great enough to admit of the act being done. The act was momentary, and for the moment the son was in control.

Some of the stipulations to which the exception applies have to do with the storage of inflammable or explosive substances. They involve static conditions rather than transitory acts. As to these provisions, longer periods of time are ordinarily involved, and existing conditions as to control would be more easily perceived because of that fact. But the test for ability to control is not different from that applicable here.

In order for the defendant to prevail, the contract must be construed to mean right of control rather than a present physical ability to regulate the doing of the forbidden act. But that is not the language of the contract. Control, not right to control, is made the test. At the time in question, it was physically impossible for the plaintiff to prevent the act which was done. Under these circumstances it would not be unreasonable to conclude that the plaintiff had no control.

So far as the decided cases go, they sustain the conclusion reached here. In determining whether a subordinate train hand was in control of a train it was decided that while the usual situation was otherwise, yet it might be that he had control for the time being. *Caron* v. *Railroad*, 164 Mass. 523. See also *Davis* v. *Railroad*, 159 Mass. 532; *Fairman* v. *Railroad*, 169 Mass. 170. In such situations, the question, who was in control, is usually one of fact for the jury. *Donahoe* v. *Railroad*, 153 Mass. 356; *Steffe* v. *Railroad*, 156 Mass. 262.

"To control the matter it would seem to be necessary that . . . [the insured] should have had some knowledge of what was being done in this building. It does not seem to me that an owner can be held to the duty of controlling that of which he does not know." *Royal Exchange Assurance of London* v. *Thrower*, 240 Fed. Rep. 811, 814. See also *North British &c. Insurance Co.* v. *Union Stockyard Co.*, 120 Ky 465.

Control of the premises necessarily includes power to determine what acts shall be done upon them. For the time being, such power was lacking. If it be said that the occasion is too transitory, the inquiry at once arises: what period of time would be sufficient? If the owner has no power to prevent the act, why should he be thought to have control over that portion of the premises when the unpre-

ventable act is done, and so be charged by indirection with the act for which it was agreed he should not be charged? If acts are done while the actor is upon the premises, how can it be said that they are not done upon some portion of the premises? If a permission to occupy an undefined spot on the barn floor, in its owner's absence, does not surrender control of the particular place where the invitee puts his car, how definitely must the space be delimited in the permission? If that space is not a portion of the premises, how much more extensive must the area be? If putting the invitee in position to act as he sees fit, in the care of his car, does not give him control at that place and in that respect, in the absence of the owner of the premises, what more formal conferment of power is required?

No answer favorable to the defendant can be made to these and similar queries, as matter of law. Whether, upon the evidence, it conclusively appears that the plaintiff was not in control, is a question not necessary to be considered. By the terms of the transferred case the plaintiff is to have judgment if his evidence entitled him to go to the jury. Upon the issue of control, the plaintiff made out a case which meets that test.

It is further suggested that the act of the son was done in the execution of partnership business and that therefore the plaintiff was in control through the agency of his partner. If it be conceded that the acts of one partner in partnership matters should be treated as the act of the other partner in his personal affairs, the case is not disposed of in favor of the defendant. There was evidence that the truck in question was hired by the son to take the place of one he owned, that he paid for all the gas used in it, that the expense of getting to and from the job they were working on was treated as the individual affair of each partner, that when they had the plaintiff's car the son rode back and forth with the father and *vice versa*, and that whenever one of them went by train he paid his own fare and made no charge therefor to the firm. Upon this evidence it could be found that the operation of the truck by the son in the transportation of his father and himself was not partnership business; and unless it was, the plaintiff could not be charged upon the ground suggested. *Taylor* v. *Jones*, 42 N. H. 25.

*Judgment for the plaintiff.*

All concurred.