Grafton
No. 85-317

THE STATE OF NEW HAMPSHIRE

v.

DOUGLAS R. PIKE

August 12, 1986

448

*Stephen E. Merrill*, attorney general (*Andrew W. Serell*, attorney, on the brief and orally), for the State.

*R. Peter Decato*, of Lebanon, by brief and orally, for the defendant.

BATCHELDER, J. In this appeal we consider whether the language of RSA 159:3 (Supp. 1985), which makes it illegal for a convicted felon to have "under his control a . . . firearm . . . or any other dangerous weapon," is unconstitutionally vague or overbroad. For the reasons which follow, we hold that it is not and therefore affirm.

On November 29, 1984, Detective Giaccone of the Hanover Police Department lawfully entered Sandra Ruggles's mobile home in Hanover. While there, he observed two rifles and two handguns on a gun rack. Detective Giaccone inquired into the ownership of the weapons. According to information furnished in part by John Ruggles, Sandra's brother, the guns belonged to the defendant, Douglas Pike. Further investigation by Detective Giaccone revealed that the defendant lived at the Ruggles mobile home and that he had been convicted of felonies in New Hampshire and Vermont. With this information, Detective Giaccone obtained a search warrant from a

justice of the Hanover District Court on November 30th. He executed the search the following day, and in the process seized the two rifles, a compound bow, arrows, and ammunition for the rifles. The two handguns previously observed were no longer present.

Thereafter, the defendant was indicted for having under his control on December 1, 1984, in violation of RSA 159:3 (Supp. 1985), the two rifles seized during the search. The statute prohibits any person previously "convicted . . . of a felony against the person or property of another [from] own[ing] or hav[ing] in his possession or under his control" various weapons. The defendant was tried by a jury in Superior Court (*Johnson*, J.) and found guilty. In his appeal, he challenges the statute on State and federal due process grounds, alleging that the element of control in the statute is vague and overbroad.

The State first argues that the issue of the statute's constitutionality was not preserved for appeal. Because we read the record below to raise such a claim, we will address the issue.

■ The standard employed by this court and the United States Supreme Court in gauging whether a statute is unconstitutionally vague has roots in *International Harvester Co. v. Kentucky*, 234 U.S. 216, 221, 223 (1914). The standard simply stated is "whether men of common intelligence must necessarily guess at [the statute's] meaning and differ as to its application." *State v. Wong*, 125 N.H. 610, 621, 486 A.2d 262, 269 (1984); *see Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973). The meaning of the phrase "under his control" is not difficult to discern. Control is defined as the "authority to direct or regulate"; when used as a verb, the word means "to regulate, . . . to exercise authority over, . . . [to] direct [or] command, . . . to curb [or] restrain." WEBSTER'S NEW WORLD DICTIONARY 165 (MacMillan Students ed. 1960).

■ The defendant argues that since he was not in the proximity of the weapons when he was arrested, he was not in control of them, and that the concept of constructive control should not be applied under the statute. These arguments, however, run counter to the notion of control as developed in New Hampshire law. This court in the past has distinguished between proprietary and possessory control in a civil case, *see Watson v. Company*, 83 N.H. 200, 140 A. 169 (1928), and it is the former concept which is involved in this case. The trial court's jury instructions illustrate what we mean by proprietary control:

> "[I]t is not a crime for a convicted felon to be in the presence of weapons, either knowingly or otherwise. A person [cannot be] convicted of a felony when he happens to walk

into a house in which there are weapons. . . . It is a crime, however, if he has control over a firearm and that means simply that he either owns that firearm, he's leased that firearm, he has borrowed that firearm, [or] somehow gotten control over that firearm[,] and that the defendant has the ability to exercise control over the firearm in a sense that he can determine who may have the ultimate use of that firearm. The question [raised is whether he is] the one who ultimately, among the persons who may have occupied that structure in which the firearms were found, could determine who could . . . use that particular rifle or rifles[.] The question then is does he have the power over the use of the weapon? . . . If he does, he controls it."

■ The defendant also argues that the statutory language did not adequately forewarn him that his presence in his girlfriend's house or his relationship with her constituted control over the weapons. In this argument, however, he misses the point. His control over the weapons is not based upon their location at any particular place, or upon his relationship with any individual. Rather, it is based upon his ability to determine the use and disposition of the guns.

■ Additionally, the defendant contends that the statute's lack of clarity makes the evidentiary standard difficult to meet or rebut. According to the State, this argument is a challenge to the sufficiency of the evidence regarding the defendant's alleged control of the weapons. The record discloses that the defendant lived at Sandra Ruggles's residence at least on a part-time basis, and that when Detective Giaccone removed the weapons, Sandra telephoned the defendant at a restaurant to tell him that "the police are taking the guns." Detective Giaccone testified that he was told by Sandra's brother that the guns belonged to the defendant. This statement was admitted without objection, although it was repudiated later at trial. In addition, ammunition for use in one of the rifles seized by Detective Giaccone was located on the defendant's person when he was arrested. The record thus contains ample evidence upon which the jury could find that the defendant controlled the weapons in violation of the statute.

■ Our reading of the statute indicates that it is sufficiently clear to withstand a facial attack on the ground of vagueness. The statute uses plain and easily understood words, and we hold that it is not unconstitutionally vague.

■ The defendant's second claim is that the statute is unconstitutionally overbroad. A statute is void for overbreadth "if it

attempts to control [conduct] by means which invade areas of protected freedom." *State v. Smith*, 127 N.H. 433, 439, 503 A.2d 774, 778 (1985); *see State v. Wong*, 125 N.H. at 622, 486 A.2d at 269; *see also Zwickler v. Koota*, 389 U.S. 241, 250 (1967); *NAACP v. Alabama*, 377 U.S. 288, 307 (1964) ("a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms"). The defendant has failed to articulate any specific area of protected freedom that the statute infringes upon; therefore his overbreadth claim is unavailing.

Moreover, we agree with the State that the defendant's arguments in this case blur the distinction between the constitutional doctrines of overbreadth and vagueness.

> "[T]he overbreadth doctrine is applicable primarily in the First Amendment area . . . and may render void legislation which is lacking neither in clarity nor precision, whereas the vagueness doctrine is rested on the due process clauses of the Fifth and Fourteenth Amendments and is applicable solely to legislation which is lacking in clarity and precision."

Annot., 45 L.Ed.2d 725, 736 (1975). *See Opinion of the Justices*, 128 N.H. 46, 509 A.2d 749 (1986); *State v. Albers*, 113 N.H. 132, 303 A.2d 197 (1973).

 The plain purpose of RSA 159:3 (Supp. 1985) is to impose upon convicted felons prescribed sanctions when they deal with weapons described by the statute. Significantly, the statute outlaws both ownership and possession, in addition to control. The legislature carefully delineated the prescribed conduct. Because RSA 159:3 (Supp. 1985) is not lacking in clarity or precision, and is not unnecessarily broad or invasive, we uphold the statute and affirm the conviction.

*Affirmed.*

JOHNSON, J., did not sit; the others concurred.