Merrimack
No. 99-783

THE STATE OF NEW HAMPSHIRE

v.

BRIAN HAMMELL

December 21, 2001

*Philip T. McLaughlin*, attorney general (*Stephen D. Fuller*, assistant attorney general, on the brief and orally), for the State.

*Richard E. Samdperil*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

NADEAU, J. The defendant, Brian Hammell, appeals his convictions in Superior Court (*McGuire*, J.), on twelve counts of being a felon in possession of a weapon. We affirm in part and reverse in part.

The record establishes the following facts. On January 31, 1999, Concord Police Officers William Dexter and Steven Smagula were dispatched to investigate an open line 911 call from an apartment in Penacook. Knocking on the door, Dexter heard a female voice say that they were all set, instructing Dexter to go away. Dexter knocked again and the door was opened by the apartment's tenant, Daniel Mathieu, who signaled with his hand for Dexter to come in.

Dexter observed a kitchen table, broken and knocked over, and the defendant, with scratches on his neck and a cut below his eye. Dexter also noticed three handguns in holsters located on the wall in an archway. Unable to locate the female he had heard, Dexter opened the door to the last remaining room in the apartment, where he observed a stockpile of long guns and a woman, later identified as Sheila Hammell, crying, partially disrobed and bleeding. The defendant slammed the door shut, shoving Dexter out of the way. Dexter arrested the defendant for assault. Dexter later learned that the defendant was a convicted felon.

After removing the defendant, Dexter returned to the apartment to speak with Mrs. Hammell. Mrs. Hammell stated that there had been a knife fight between the defendant and Jeffrey Smith, in which she was accidentally wounded. Dexter left the apartment to find Smith, who later stated that there had been a fistfight between the defendant and Mrs. Hammell, which Smith had tried to break up. Smith claimed that the defendant then pulled a knife on him. After questioning Smith, Dexter returned to the apartment where Officer Smagula was still in the process of inventorying Mathieu's weapons.

Upon his return, Dexter relayed to Mrs. Hammell Smith's version of the night's events, which she denied. Mrs. Hammell then showed Dexter four knives located in the bedroom, describing which knives were used in the altercation. Dexter observed that one of the knives had blood on the blade. At that point Dexter seized all four knives and removed them from the apartment.

After booking, the police searched the defendant and found fifteen twenty-two caliber rounds. Though all of the weapons observed in the apartment belonged to Mathieu, the police determined that the defendant had access to and control of the numerous firearms in the apartment and returned to collect them. Dexter told Mathieu that the police had learned that the defendant was a convicted felon and that they wanted to seize Mathieu's weapons in connection with their criminal investigation. Dexter also expressed concern for the haphazard manner in which the weapons were stored. After expressing concern about recovering his firearms, Mathieu asked Dexter what options he had. Dexter explained that Mathieu could either surrender his weapons voluntarily or the police could petition a judge for permission to seize them. Mathieu was agreeable during the conversation and nodded his head as Dexter explained his options. The trial court found that Mathieu then "threw up his hands and stated that the police could do what they had to do." Thirty-six firearms and four knives were recovered in the apartment. The defendant was charged with forty counts of being a felon in possession of a weapon and one count of simple assault.

After a jury trial, the defendant was found guilty on twelve counts of being a felon in possession of a weapon and one count of simple assault. Pursuant to RSA 651:6, I(c) (Supp. 1999), providing for extended terms of imprisonment, the defendant was sentenced to not more than fifteen years nor less than seven and one-half years for each of the twelve possession convictions and to a term of twelve months for the simple assault, all sentences to be served concurrently.

On appeal, the defendant argues that the trial court erroneously denied his motion to suppress the weapons, that the evidence linking him to the weapons was insufficient, that the trial court erred when it denied his motion to dismiss on grounds of prosecutorial overreaching, and that the trial court erred by imposing the extended terms of imprisonment.

The defendant first argues that the seizure of the four knives and the thirty-six firearms violated Part I, Article 19 of the New Hampshire Constitution. The trial court upheld the seizure of the knives under the plain view exception to the warrant requirement. The court further found that the search and seizure of the firearms was voluntarily consented to by

Mathieu. Accordingly, we will consider the search and seizure of the knives and the firearms separately.

The defendant argues that the seizure of the knives does not fall within the plain view exception because Dexter's viewing of the knives was not inadvertent. Under our State Constitution, the State must prove three criteria by a preponderance of the evidence to justify a seizure under this exception: "(1) The initial intrusion which afforded the view must have been lawful; (2) the discovery of the evidence must have been inadvertent; and (3) the incriminating nature of the evidence must have been immediately apparent." *State v. Murray*, 134 N.H. 613, 615 (1991) (citation omitted). *But cf. Horton v. California*, 496 U.S. 128, 136-37 (1990) (eliminating necessity for inadvertent discovery under the plain view exception). "The purpose of the 'immediately apparent' requirement is to prevent 'general, exploratory rummaging in a person's belongings.'" *Arizona v. Hicks*, 480 U.S. 321, 334 (1987) (O'Connor, J., dissenting) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).

Our review of the superior court's order is *de novo*, except as to any "controlling facts determined at the superior court level in the first instance." *State v. Decoteau*, 137 N.H. 106, 111-12 (1993). We defer to the trial court's determinations of credibility unless "no reasonable person could have come to the same conclusion after weighing the . . . testimony." *State v. Patch*, 142 N.H. 453, 458-59 (1997) (citation omitted).

At the time of the seizure, the trial court found that Dexter was investigating an altercation among the defendant, Mrs. Hammell and Jeffrey Smith. Questioning Mrs. Hammell and Smith, Dexter received conflicting information concerning the fight. As the trial court found, "It was in response to Jeffrey Smith's version of events that Sheila Hammell took Officer Dexter into the bedroom, showed him the knives allegedly involved in the altercation, and described who held what knife."

The defendant contends that the plain view exception to the warrant requirement is not applicable in this case because Dexter's discovery of the knives was not inadvertent. The defendant argues that because Dexter had been in the apartment earlier that night, learned of the existence of the knives, but left to question Smith, his return and continued questioning belies any claim that the subsequent view was inadvertent. We disagree. As the trial court correctly found, Dexter did not have probable cause to seize the knives when he was questioning Mrs. Hammell. Rather, Dexter was attempting to reconcile with Mrs. Hammell conflicting information provided by Smith. It was in response to Smith's version of events that

Mrs. Hammell voluntarily led Dexter into the bedroom and showed him the knives. The discovery of the knives was therefore inadvertent.

The defendant also argues that even if the view of the knives involved in the altercation was lawful, the subsequent seizure of the remaining knives was not. Because two knives were not used in the altercation, the defendant maintains that their incriminating nature was not immediately apparent, thereby failing the third prong of *Murray*. We disagree. At the time the knives were seized, Dexter had been given two conflicting accounts of the altercation. In addition, both the defendant and Mrs. Hammell had been bleeding and one of the knives had blood on the blade. Under those circumstances, the incriminating nature of the knives was apparent. Therefore, Dexter's discovery of all four knives was permissible under the plain view exception to the warrant requirement.

The defendant next argues that the State failed to prove that Mathieu voluntarily consented to the seizure of the thirty-six firearms. To prove consent under Part I, Article 19 of the New Hampshire Constitution, the State must show that, under the circumstances surrounding the search, it was objectively reasonable for the officers conducting the search to believe that Mathieu had consented to it. *State v. Baroudi*, 137 N.H. 62, 66 (1993). We will disturb the trial court's finding only if it is not supported by the record. *See State v. McGann*, 124 N.H. 101, 106 (1983).

The defendant argues that Mathieu's statement, telling the police to "do what [they] have to do," did not clearly manifest consent to seize the firearms in question. We disagree. In light of the attendant facts, it was objectively reasonable for Smagula and Dexter to believe that Mathieu's statements, gestures and subsequent behavior, manifested free, knowing and voluntary consent. Dexter informed Mathieu that he could voluntarily surrender the weapons or wait for the officers to petition the court for a warrant. The record reflects that Mathieu's statement to the police, accompanied by the raising of his hands into the air, indicated consent. *Cf. State v. Prevost*, 141 N.H. 647, 650 (1997).

We note that the trial court observed Mathieu make similar hand gestures while testifying and found it reasonable to construe such gestures as consent. In addition, after conversing with the officers, Mathieu assisted them in collecting the firearms, even retrieving firearms the police did not know existed. That behavior confirms Mathieu's consent to the seizure of the firearms. Accordingly, the trial court's determination that Mathieu gave free, knowing, and voluntary consent was not error.

The defendant next argues that the evidence was insufficient to support his twelve convictions for being a felon in possession of a weapon. *See* RSA

159:3, I (1994). The defendant was found guilty of: four counts of possessing a knife; five counts of possessing a twenty-two caliber weapon; and three counts of possessing a forty-five caliber weapon. To prevail on a challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, evaluating all of the evidence and its reasonable inferences in the light most favorable to the State, could conclude beyond a reasonable doubt that he had committed the charged crime. *State v. Graham*, 142 N.H. 357, 360 (1997).

To convict the defendant of being a felon in possession of a weapon, the State must prove beyond a reasonable doubt that: (1) the defendant was a convicted felon; and (2) that he knowingly either owned, had in his possession, or had under his control the weapons detailed in the indictments. *See* RSA 159:3, I(a). The defendant has not contested his status as a felon. The State has not alleged that the defendant owned the firearms in question. Thus, the issue with which we are confronted is whether the defendant possessed or controlled the weapons.

"Control is defined as the authority to direct or regulate; when used as a verb, the word means to regulate, . . . to exercise authority over, . . . [to] direct [or] command, . . . to curb [or] restrain." *State v. Pike*, 128 N.H. 447, 449 (1986) (quotations omitted). In determining whether the defendant had control, "[t]he question [raised is whether he is] the one who ultimately, among the persons who may have occupied that structure in which the firearms were found, could determine who could . . . use that particular rifle or rifles[.]" *Id.* at 450.

Reviewing the trial record, we hold that a rational trier of fact, evaluating all of the evidence and its reasonable inferences in the light most favorable to the State, could conclude beyond a reasonable doubt that the defendant was in control of the four knives discovered in the bedroom of the apartment. *See Graham*, 142 N.H. at 360. Both the defendant and Mrs. Hammell were residing in the apartment at the time of the incident. When Dexter arrived at the apartment he discovered both the defendant and Mrs. Hammell bleeding. Mrs. Hammell identified knives she claimed were brandished by the defendant and Smith in the earlier altercation. One of the four knives seized by Dexter had blood on the blade and all four knives were lying in close proximity to one another. In addition, at trial the defendant's cellmate, Keith Olsen, testified that the defendant admitted to being in a fight with Smith in which both men brandished knives.

In light of this evidence, it was reasonable for the jury to conclude that the defendant actually possessed at least one of the knives. Given the knives' immediate proximity to each other, it was also reasonable for the

jury to conclude that the defendant could have brandished any of them, thereby demonstrating that all four knives were under his control because he could determine their use and disposition. *See Pike*, 128 N.H. at 450. Therefore, the evidence was sufficient to support the defendant's convictions for being in possession of all four knives.

Similarly, the record reveals sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that the defendant was in control of the twenty-two caliber weapons found in the apartment. *See Graham*, 142 N.H. at 360. At the time of his arrest, the defendant had fifteen rounds of twenty-two caliber ammunition in his pocket. In addition, Olsen also testified that the defendant admitted that he had been shooting twenty-two caliber weapons with Mathieu on the day of his arrest. This evidence indicates that the defendant had possession of at least one of the twenty-two caliber weapons found in the apartment. That the defendant had fifteen rounds of twenty-two caliber ammunition on his person, and his proximity to the weapons, is evidence that he had the ability to determine the use and disposition of those weapons and, therefore, control of all five of the twenty-two caliber weapons. *See Pike*, 128 N.H. at 450. Accordingly, the evidence was sufficient to support the defendant's convictions for possession of the twenty-two caliber weapons.

We reach a different conclusion, however, as to the forty-five caliber handguns in the apartment archway. The only evidence tying the defendant to the handguns was his close proximity to them. Control over the weapons is not based upon their location; rather, it is based upon the defendant's ability to determine the use and disposition of the guns. *Pike*, 128 N.H. at 450. While the defendant lived in Mathieu's apartment, this fact merely shows that he had access to the handguns, not the power to control their use. *Accord State v. Haycock*, 136 N.H. 361, 363 (1992). Absent additional facts, the evidence was insufficient for the jury to find the defendant guilty of possessing them. Therefore, the defendant's convictions on three counts of possessing forty-five caliber weapons is reversed.

The defendant next contends that the State's decision to charge him with forty separate indictments was prosecutorial overreaching and had the probable result of confusing the jury. The trial court found that each weapon could be the subject of a separate indictment and that the cumulative effect of the indictments did not constitute vindictive prosecution. We agree. In *State v. Stratton*, a case with remarkably similar facts, we approved multiple indictments under RSA 159:3. *State v. Stratton*, 132 N.H. 451, 454 (1989). In *Stratton* the defendant was charged

with, among other things, seven counts of being a felon in possession of a firearm. *See id.* at 453.

The defendant argues that the numerical difference between the forty indictments at issue here and the seven charged in *Stratton* is dispositive. "Multiple indictments are permissible only if 'proof of the elements of the crimes as charged will in actuality require a difference in evidence.'" *Stratton*, 132 N.H. at 454 (citation and emphasis omitted). In the pending matter, the State specified in each of the forty indictments a particular weapon identified by type, make, model, caliber and serial number. Because the provisions of RSA 159:3 are unambiguous and consistently singular, each firearm possessed or controlled by the defendant was the proper subject of a separate indictment.

There is no evidence to support the defendant's contention that the State engaged in prosecutorial overreaching. The State has broad discretion when charging a defendant with multiple offenses arising out of a single event. *State v. Rayes*, 142 N.H. 496, 500 (1997). While the trial court was empowered to curb the prosecution's broad discretion if there existed the danger of confusion, harassment or other unfair prejudice, *State v. MacLeod*, 141 N.H. 427, 434 (1996), we do not find those dangers here.

Finally, the defendant argues that the trial court erred when it applied the extended term statute to his sentence. *See* RSA 651:6, I (c) (Supp. 2000). RSA 651:6 states, in part:

> I. A convicted person may be sentenced according to paragraph II if the court also finds, and includes such findings in the record, that:
>
> . . . .
>
> c) He has twice previously been imprisoned, in this state or in any other jurisdiction, on sentences in excess of one year;

The defendant argues that he had not twice previously been imprisoned for sentences in excess of one year. On September 5, 1996, the defendant was imprisoned on a sentence of one-and-a-half to three years for second-degree assault. At that time, he was given a suspended sentence of one to three years for first-degree assault. On January 31, 1999, the defendant was arrested for the incident underlying his pending appeal. On February 3, 1999, the State moved to impose the suspended sentence and the trial

court subsequently granted that motion. The defendant argues that the trial court erred by applying the extended term statute because the second prison sentence had not been imposed until after his arrest in the pending matter. We disagree.

On questions of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *State v. Berry*, 121 N.H. 324, 327 (1981). When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent. *State v. Comeau*, 142 N.H. 84, 86 (1997). The statute requires that the court make two findings *at the time of sentencing*: two prior convictions, resulting in imprisonments on sentences in excess of one year each. *See State v. Heald*, 120 N.H. 319, 324 (1980) (emphasis added). There is nothing in the plain language of the statute or the statutory scheme to indicate that the phrase "previously been imprisoned" means prior to the date of the commission of the third offense. RSA 651:6, I(c). We "can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include." *Appeal of Astro Spectacular*, 138 N.H. 298, 300 (1994) (quotation omitted).

For the foregoing reasons we interpret RSA 651:6, I(c) as requiring only that trial courts find, at the time of sentencing, that the defendant has twice previously been imprisoned on sentences of more than one year.

*Affirmed in part; reversed in part.*

BROCK, C.J., and BRODERICK and DALIANIS, JJ., concurred.