Hillsborough-northern judicial district
No. 96-265

THE STATE OF NEW HAMPSHIRE

v.

ROBERT E. HAINES

March 26, 1998

*Steven M. Houran*, acting attorney general (*Ann M. Rice*, senior assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

*Robert E. Haines*, by brief, *pro se*.

THAYER, J. The defendant, Robert E. Haines, appeals his convictions of felonious reckless conduct, RSA 631:3, II (1996), and felonious use of body armor, RSA 650-B:2 (1996) (amended 1996). The defendant also appeals the Trial Court's (*Conboy*, J.) finding that RSA 651:2, II-g (1996) (amended 1996) requires the imposition of a mandatory prison sentence of three to six years. We affirm.

The defendant campaigned for president in February 1995. He traveled by truck with his wife and infant son from Washington, D.C. to Manchester that same month. During the evening of February 18, the defendant entered the Salty Dog restaurant and bar to continue his campaigning. While handing out political leaflets, the defendant encountered Kevin Lavigne, a patron of the Salty Dog. Following a brief conversation, Lavigne ripped one of the defendant's political leaflets and scattered the pieces to the floor. At this point, the defendant left the bar. From the sidewalk, the defendant motioned for Lavigne to step outside. Lavigne accepted. After some pushing between the two men, an employee of the bar separated them. The defendant, however, sought out a nearby police officer. The defendant told the officer, Robert Oxley, that he had been assaulted. After investigating the incident, Officer Oxley informed the defendant that he did not believe an assault had occurred. The defendant then became upset with Officer Oxley and reported his failure to take action in a "911" telephone call.

A short time later, two other patrons of the bar, Christian Busch and Jeffrey Meyer, exited the Salty Dog looking for a friend who was supposed to meet them. Busch crossed the street and walked

toward an individual he thought was his friend. The defendant, observing Busch, simultaneously went to his truck and retrieved a rifle. The defendant chambered a round into the rifle by pumping the barrel once. He approached Busch, aimed the gun at him, and put his hands in a position ready to fire. Busch saw the rifle and ran away. The rifle was operational and loaded with four bullets at the time the defendant approached Busch. Officer Oxley, who, still in the area, witnessed the defendant's actions, ordered the defendant to disarm and assume a prone position. Officer Oxley then placed the defendant under arrest. During a pat-down search of the defendant, the police discovered that he was wearing body armor, specifically, a bullet-proof vest.

At trial, the defendant contended that he wore the body armor because he was a candidate for president. He further argued that he had drawn his weapon in self-defense after Busch allegedly charged at him in the street. The jury convicted the defendant of reckless conduct and felonious use of body armor. *See* RSA 631:3; RSA 650-B:2.

The trial court denied both the defendant's motion to set aside the verdict and request for a mistrial based on the State's closing argument. He appeals his conviction and sentence on numerous grounds. We address his arguments in turn.

*I. Application of the Minimum Mandatory Sentence*

■ The defendant first asserts that the legislature did not intend RSA 651:2, II-g, requiring a minimum mandatory sentence, to apply to reckless conduct. We disagree.

When interpreting a statute, we first look to the language of the statute itself. *State v. Hart*, 130 N.H. 325, 326, 540 A.2d 859, 859 (1988). The legislature added RSA 651:2, II-g to the sentencing guidelines in 1990. The statute states:

> If a person is convicted of a felony, an element of which is the possession, use, or attempted use of a deadly weapon, and the deadly weapon is a firearm . . . [h]e shall be given a minimum mandatory sentence of not less than 3 years' imprisonment for a first offense . . . .

RSA 651:2, II-g. Here, the jury found the defendant guilty of a felony — reckless conduct. RSA 631:3, II provides: "Reckless conduct is a class B felony if the person uses a deadly weapon as defined in RSA 625:11, V. All other reckless conduct is a misdemeanor." Thus, an element of the felony was the use of a deadly weapon, and the deadly weapon used by the defendant was a firearm. We fail

to see any ambiguity in RSA 651:2, II-g. In fact, a clearer version of this statute is hard to imagine. Its meaning is not subject to judicial construction or revision. *See Appeal of Hickey*, 139 N.H. 586, 587, 660 A.2d 1098, 1099 (1995); *State v. Dushame*, 136 N.H. 309, 314, 616 A.2d 469, 471-72 (1992).

The defendant insists that because the legislature amended seven other statutes to reference RSA 651:2, II-g at the time that statute was passed, the legislature did not intend RSA 631:3 to incorporate RSA 651:2, II-g. We disagree.

While the principle of *expressio unius est exclusio alteris* (the expression of one thing is the exclusion of another) at first blush might seem to support the defendant's position, a more reasonable rationale exists for why RSA 631:3 does not specifically reference RSA 651:2, II-g. When the legislature enacted RSA 651:2, II-g, reckless conduct was a misdemeanor. RSA 651:2, II-g applies only to felonies.

The legislature enacted RSA 631:3, II, making reckless conduct with a deadly weapon a felony, in 1994, four years *after* enacting the minimum mandatory sentencing statute for felonies committed with a firearm. Laws 1994, 187:1. Once the minimum mandatory sentencing statute was in place, the legislature was free to enact subsequent legislation subject to its parameters. Felony reckless conduct became subject to those parameters in 1994. We assume the legislature was aware, by creating a class of reckless conduct constituting a felony, that such activity would be punishable by whatever preexisting scheme governed, including RSA 651:2, II-g.

*II. Double Jeopardy*

█ The defendant next argues that the sentence enhancement under RSA 651:2, II-g (minimum mandatory sentence for firearms) combined with the enhancement from a misdemeanor to a Class B felony under RSA 631:3, II for use of a deadly weapon, violates the double jeopardy provisions of the State and Federal Constitutions. We disagree.

We confine our analysis to the State Constitution, *see State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983), because the Federal Constitution affords the defendant no greater protection, *see Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

██ "The double jeopardy prohibition protects a defendant from multiple punishments for the same offense." *State v. Gooden*, 133 N.H. 674, 679, 582 A.2d 607, 610 (1990). In analyzing claims of multiple punishments, "we have only recognized a double jeopardy

violation in cases in which the defendant has been at least twice convicted and at least twice sentenced for separate charges that amounted to the same offense." *State v. Ringuette*, 142 N.H. 163, 165, 697 A.2d 507, 509 (1997). In this case, the defendant has been charged with but *one* offense, reckless conduct, and has received but *one* punishment, a minimum mandatory sentence of three years. The fact that use of a firearm made the reckless conduct a felony and, thus, subject to a minimum mandatory sentence is of no moment.

We have examined this concept previously. For example, in *Ringuette* the defendant committed the crime of stalking, a violation of RSA 633:3-a (1996) (amended 1997), while out on bail for an underlying assault charge. *Ringuette*, 142 N.H. at 164-65, 697 A.2d at 508-09. He was sentenced to twelve months for stalking and an additional twelve months for being convicted of an offense while out on bail. *Id.* The fact that the offense occurred while the defendant was released on bail served to enhance the sentence for stalking. Put another way, the bail violation was an aggravating factor the court was statutorily bound to consider. We recognized only one offense. We refused to extend double jeopardy protections to situations involving "only one charged offense and one enhanced sentence." *Id.* at 166, 697 A.2d at 510; *see also State v. Hennessey*, 142 N.H. 149, 162, 697 A.2d 930, 939 (1997).

Similarly, in *Hennessey* we noted that no violation of double jeopardy occurred where the trial court enhanced the defendant's sentence for sexual assault due to the age of the victim. *Hennessey*, 142 N.H. at 162, 697 A.2d at 939. We stated:

> [T]he defendant has been convicted once under RSA 632-A:2, I(l) [aggravated felonious sexual assault on a victim under age 13] and sentenced once under RSA 651:6, I(f) [extended sentences for aggravating factors]. The critical distinction is that RSA 651:6 merely provides an alternative extended sentence for certain offenses which the trial court may impose provided certain criteria are met, and not an additional offense and sentence based on circumstances already used to elevate another offense.

*Id.* (emphasis omitted). Like the defendant in *Ringuette*, the defendant in *Hennessey* committed *one* crime for which he received *one* sentence. The consideration of an enhancement factor amounts not to a second punishment, but rather to a more *severe* punishment. "[T]he legislature may attach a more severe sentence to a crime based on the presence of certain identified enhancers." *Ringuette*, 142 N.H. at 167, 697 A.2d at 510.

Accordingly, we reject the defendant's argument and again refuse to extend double jeopardy tenets to include, beyond multiple punishments, multiple enhancement factors.

Before proceeding, we note that the legislature developed the sentencing scheme at issue in direct response to our decisions in *Heald v. Perrin*, 123 N.H. 468, 464 A.2d 275 (1983), and *State v. Houtenbrink*, 130 N.H. 385, 539 A.2d 714 (1988). *See* MINUTES OF SEN. JUDICIARY COMM. HB 700-FN (Mar. 7, 1990). Those two decisions held unconstitutional sentencing a defendant once for felonious use of a firearm and again for an underlying crime when the penalty for the underlying crime had been enhanced for use of a firearm. Such punishments did violate double jeopardy. The legislature enacted RSA 651:2, II-g to correct the problems in *Heald* and *Houtenbrink*. We recognize no defect in the legislature's approach.

### III. Request for Funds and Depositions

The defendant next argues that the trial court abused its discretion by denying the defendant's request for funds and authorization to depose two witnesses, Meyer and Busch. We hold that it did not.

■ "A defendant has no general and unqualified due process right under either the State or Federal Constitutions to compel depositions in criminal cases." *State v. Rhoades*, 139 N.H. 432, 433, 655 A.2d 414, 415 (1995). RSA 517:13 (1997) governs depositions in criminal cases. That statute gives the court discretion, upon a proper showing of cause, to permit either side to take depositions. *See* RSA 517:13, II. The record reflects that the trial court considered RSA 517:13 and the evidence presented by the defendant in favor of allowing the depositions. The trial court found that the defendant was not entitled to such depositions because he had access to extensive discovery records and would suffer no unfair surprise at trial.

■ ■ We will not overturn the trial court's decision absent an abuse of discretion. *Rhoades*, 139 N.H. at 433, 655 A.2d at 415. The defendant must show that the trial court's ruling was "clearly untenable or unreasonable to the prejudice of his case." *State v. Chick*, 141 N.H. 503, 504, 688 A.2d 553, 554 (1996). The trial court found that the defendant had access to detailed police reports about Meyer and Busch. The trial court also noted that the defendant had received extensive discovery throughout the case and the chance for surprise at trial was slight. The trial court found that the defendant failed to demonstrate that the complexity of the issues involved

warranted depositions. *See* RSA 517:13, II(b). Under these facts, the ruling of the trial court was not clearly untenable or unreasonable. Thus, the trial court did not abuse its discretion by denying the defendant's motion to take depositions and the funds to take them. *See Chick*, 141 N.H. at 504, 688 A.2d at 554; *see also State v. Stow*, 136 N.H. 598, 605, 620 A.2d 1023, 1027 (1993).

*IV. Overbreadth and Vagueness of Body Armor Statute*

The defendant next asserts that the trial court erred when it failed to dismiss the indictment alleging felonious use of body armor. The defendant claims that the felonious use of body armor statute, RSA 650-B:2, is unconstitutionally overbroad and vague. We disagree.

■ ■ A statute fails for overbreadth when it "sweep[s] unnecessarily broadly and thereby invade[s] . . . protected freedoms." *State v. Albers*, 113 N.H. 132, 134, 303 A.2d 197, 199 (1973) (quotation omitted); *see also State v. Pike*, 128 N.H. 447, 450-51, 514 A.2d 1279, 1281 (1986). Mere ambiguities of language will not suffice to invalidate a statute on grounds of overbreadth. The statute must proscribe behavior normally protected. *See Pike*, 128 N.H. at 451, 514 A.2d at 1281; *Albers*, 113 N.H. at 134, 303 A.2d at 199. Thus, even if the *language* of RSA 650-B:2 is susceptible to an expansive reading, as defendant asserts, no constitutional violation exists absent an impingement on some protected right. Defendant's *pro se* brief does not specify what protected behavior, if any, is involved here. *See N.E. Tel. & Tel. Co. v. City of Franklin*, 141 N.H. 449, 454, 685 A.2d 913, 918 (1996) (noting that we need not devote appellate resources to issues that have only received "passing reference" in party's brief). We, thus, need not address this argument further.

We, likewise, need not address the defendant's vagueness argument because his *pro se* brief fails to expound adequately upon whatever constitutional deficiency he perceives in RSA 650-B:2. *Id.*

*V. Sufficiency of the Evidence*

The defendant challenges the sufficiency of the evidence that: (1) he wore body armor for the purpose of committing a felony; and (2) that his conduct placed anyone in danger of "serious bodily injury."

As for the defendant's first insufficiency claim, we begin by referring to the statute itself. RSA 650-B:2 states: "A person is guilty of a class B felony if he commits or attempts to commit any felony while using or wearing body armor." RSA 650-B:2, I (Supp. 1997). Nowhere does RSA 650-B:2 require a specific mental state.

The defendant would have us read a *mens rea* of "purposely" into the statute, so that the State would have to prove that he wore body armor for the purpose of committing a crime. He asserts that the evidence lacked the sufficiency required to show such a *mens rea*.

■■■ "Where a specific mental state is not provided for the offense, we read . . . [the statute] as requiring proof of a culpable mental state which is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question." *State v. Goodwin*, 140 N.H. 672, 673, 671 A.2d 554, 555 (1996); *see also State v. Aldrich*, 124 N.H. 43, 49, 466 A.2d 938, 941 (1983). The policy behind punishing the use of body armor worn during the commission or attempted commission of a felony was the broad deterrence of body armor use in general. *See* N.H.H.R. JOUR. 480 (1983) (comments of Rep. Flanders). The use of body armor during the commission of a felony may serve to embolden the criminal and hinder arrest. The legislature intended to reduce these dangers. A requirement that the defendant act "knowingly" as to wearing the body armor, rather than wearing it for the purpose of committing a felony, better fits the policy considerations of the legislature. *Compare* RSA 626:2, II(b) (1996) (defining "knowingly") *with* RSA 626:2, II(a) (1996) (defining "purposely"). Because we hold that RSA 650-B:2 requires that the defendant acted "knowingly" and not "purposely," we need not consider the defendant's assertion that the evidence failed to sufficiently establish that he wore body armor for the purpose of committing a felony.

The defendant next argues that the evidence does not support a finding that he placed another in danger of "serious bodily injury." RSA 631:3, I, provides that a person is guilty of reckless conduct if he recklessly engages in conduct "which places or may place another in danger of serious bodily injury."

■■ "In examining the sufficiency of the evidence, we must determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *State v. Glidden*, 122 N.H. 41, 49, 441 A.2d 728, 733 (1982). The jury could have found that the defendant aimed a loaded rifle at another individual in the vicinity of bystanders. The defendant argues that because he did not fire the rifle, he never put anyone in danger of serious bodily injury. We disagree. We hold that a rational trier of fact could find that brandishing a loaded rifle at another individual in the middle of town constitutes reckless behavior placing another in danger of serious bodily injury. *See* MODEL PENAL CODE AND COMMENTARIES § 211.2 (1985); *State v. Pelky*, 131 N.H. 715, 718,

559 A.2d 1345, 1347 (1989) (defining recklessness in context of second degree assault); *see also People v. Andersch*, 438 N.E.2d 482, 488 (Ill. App. Ct. 1982) (stating that pointing a loaded weapon at another constitutes recklessness).

## VI. Prosecutorial Misconduct

We next address the defendant's argument that the prosecutor made prejudicial comments to the jury during closing argument regarding the fact that the victim never testified. The defendant argues that the trial court's failure to set aside the verdict constitutes reversible error. We hold that it does not.

The victim in this case did not testify. The prosecutor, during closing argument, asked the jury to consider, among other things, whether the victim did not testify because he "simply wasn't available." The defendant argues that this statement intentionally misled the jury and was an attempt to neutralize the missing witness instruction the trial court gave. The defendant asserts that following the trial he learned that the prosecution was aware that the victim, rather than being unavailable, chose not to appear.

"A prosecutor's impermissible comment may require a new trial . . . ." *State v. Turgeon*, 137 N.H. 544, 546, 630 A.2d 276, 277 (1993). "[W]e look at the prosecutor's alleged misconduct and balance several factors: the severity of the misconduct, whether it was deliberate or accidental, the context in which it occurred, the likely curative effect of the judge's admonitions and the strength of the evidence against the defendant." *Id.* at 547, 630 A.2d at 277-78 (quotation omitted). The defendant suggests that the prosecutor's action was deliberate and, due to the timing of the event, no curative instruction was possible. Even if true, the overwhelming weight of the evidence counsels us to hold that the trial court did not abuse its discretion. *See State v. Mansfield*, 134 N.H. 287, 289, 592 A.2d 512, 513 (1991) (setting forth the standard of review for examining denial of a mistrial).

The alleged misconduct here amounts to a short hypothetical question posed to the jury during a lengthy closing argument following a very strong case by the State. The decision to grant or deny a mistrial rests within the sound discretion of the trial court. *Id.* We cannot say as a matter of law that the trial court abused its discretion when it denied the defendant's request for a mistrial based on the prosecutor's statement.

We have reviewed the record with respect to the defendant's remaining arguments and find them to be without merit and

warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

All concurred.