# United States Court of Appeals
## For the First Circuit

No. 03-2011

ROBERT E. HAINES,

Petitioner, Appellant,

v.

HENRY RISLEY, ET AL.,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Boudin, Chief Judge,

Campbell and Cyr, Senior Circuit Judges.

Bjorn Lange, Assistant Federal Public Defender, for appellant.
Ann M. Rice, Associate Attorney General, Criminal Justice Bureau, with whom Kelly A. Ayotte, Attorney General, was on brief for appellees.

June 24, 2005

**BOUDIN**, **Chief Judge**.    On December 1, 1995, in Hillsborough County Superior Court in Manchester, New Hampshire, a jury convicted Robert Haines of one count of felonious reckless conduct, N.H. Rev. Stat. Ann. § 631:3, II (1996), and one count of felonious use of body armor, id. § 650-B:2 (1996).  Haines was sentenced to the mandatory minimum of three to six years' imprisonment on the former count, and a 12-month suspended sentence on the latter.  Thereafter, the New Hampshire Supreme Court affirmed. State v. Haines, 709 A.2d 762 (N.H. 1998).

After unsuccessful collateral attacks in state court, Haines sought habeas relief in the federal district court, which granted summary judgment in favor of the state.  We granted a certificate of appealability to consider Haines' ineffective assistance claims and now affirm.

The crux of the main charge in state court--reckless endangerment--was that early on the morning of February 19, 1995, Haines had taken a loaded rifle out of his truck and pointed it at an individual named Christian Busch.[1]  The prior evening, Haines had driven to Manchester in a truck with his wife to campaign for himself in the presidential primaries.  While he was campaigning in

---

[1]Haines had unquestionably been wearing body armor; but the body armor charge depended on proof that he had done so in the course of a felony, here reckless endangerment.  The two crimes, although tried together, were listed in separate indictments; but the body armor indictment repeated the facts underlying the endangerment indictment.

a local bar named The Salty Dog, dressed in Western garb and a cowboy hat, another patron taunted him, tearing up one of his campaign pamphlets and throwing his pocket-sized American flag on the floor; thereafter, outside the bar, the patron pushed Haines who then sought out the police.  It was now nearly one o'clock on the morning of the 19th.

Police Officer Robert Oxley spoke to Haines and the bar bouncer and concluded that Haines had not been harmed.  Haines became agitated, threatened to report Oxley for dereliction of duty, and was told to leave the area.  Haines eventually retreated to his truck, which was parked down the block; Oxley, concerned about Haines, returned to his cruiser but stayed in the area.  A little later, two other bar patrons--Jeffrey Meyer and Christian Busch--left the premises and started down the block toward Haines and his truck.

Seeing Haines, Busch mistook him for a friend for whom he had been waiting, started toward him at a jog or trot, and shouted an obscenity.  Haines extracted a rifle from the truck and Meyer later testified that Haines had pointed it at Busch.  Oxley, who was then driving back through the area, later testified that he had seen Haines retrieve the rifle and pump it to chamber a round, but had not seen Busch or the pointing of the rifle at Busch.  Busch, who had fled the scene when confronted with the rifle, did not testify.

Haines was arrested, charged as described above, and tried. The indictment, tracking the language of the New Hampshire reckless endangerment statute, charged as to main offense that Haines had "recklessly engage[d] in conduct which placed or may have placed another in danger of serious bodily injury by the use of a deadly weapon in that he brandished a loaded Remington .35-caliber rifle and pointed it at Christian Busch." Initially, the prosecution's main theory was that Busch was the endangered person.

As his main defense at trial, Haines maintained that he had brandished the gun to ward off a perceived threat from Busch, but had not chambered a bullet until after Busch had fled and thus could not in fact have endangered Busch. Haines' wife testified that Haines had been beaten in a prior incident while campaigning and that Busch had been approaching quickly in a threatening manner. She also said that Haines had not pointed the gun at Busch but was somewhat shaky on this point. Haines did not testify.

During the trial, the state did adduce some evidence that there were other individuals outside the bar when Haines had his nearby confrontation with Busch, but when the prosecution began to explore the risk of harm to others at the start of trial the court expressed concern and admonished counsel to "stay within the format of opening statements." Nevertheless, before the case went to the jury, the trial judge refused a request by Haines that the jury be instructed that only the danger to Busch could be considered.

After retiring, the jury inquired: "Can we consider that reckless conduct was directed only at Mr. Busch or at other people?" The court responded that the state needed to prove that Haines had brandished a loaded Remington .35-caliber rifle and pointed it at Busch and that such conduct placed or might have placed another person--including but not limited to Busch--in danger of serious bodily injury. Haines' attorney again objected without effect. The conviction followed.

On direct appeal, Haines' counsel did not challenge the conviction but focused instead on whether the three-year statutory minimum sentence applied and whether a pair of firearm enhancement provisions in the endangerment statute violated the state constitution's double jeopardy clause. Haines then began his travel through state and federal habeas proceedings. In this court, Haines argues exclusively that his representation both at trial and in the state appeal were constitutionally inadequate.

An ineffective assistance claim requires Haines to show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's failures were so serious as to deprive the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984). It will simplify matters to

assume, overmuch in Haines' favor, that his present claims were all properly preserved in state court and that our review is de novo.[2]

Haines' critique of his counsel's performance at trial is not persuasive. In the first of two lines of criticism, Haines says that he told his counsel that he did not point his rifle at Busch but counsel did not press this contention at trial and instead effectively conceded the point in closing argument by stating that Haines had "stuck the gun basically in [Busch's] face." This, says Haines, amounted to ignoring a promising line of defense and giving the case away to the prosecution.

However, counsel's words fell short of conceding that Haines had actually pointed the gun at Busch; pointing was not mentioned and counsel's description fit within the picture presented by Haines' wife--that Busch had come within six feet of her husband before turning away and that, pointing or not, Haines was at least then holding the weapon in a threatening manner defensively, for the purpose of warding off a perceived attack. Moreover, Meyer gave positive and emphatic direct testimony that he

---

[2]In most contexts, federal habeas review of state convictions is subject to standards of review favorable to the state where the federal issues of fact or law have been decided in the state court; and where they have not been decided, forfeiture or failure to exhaust are likely to bar the claims. See 28 U.S.C. § 2254 (2000); Wainwright v. Sykes, 433 U.S. 72, 81-91 (1977). New Hampshire has colorable arguments that some of Haines' present claims were not fully presented to the state court or were presented and the state court's judgment must be deferred to; but our contrary assumption avoids detours and does not alter the result.

had seen Haines point the gun directly at Busch, and it was not disputed that Busch had rapidly left the scene. Haines' wife testified at first that the rifle had not been pointed at Busch but her later testimony was less clear on this issue,[3] and as the defendant's spouse she was especially vulnerable to impeachment (although we recognize that Meyer was a longtime friend of Busch). Haines previously argued that his attorney had improperly prevented him from testifying, but the state and district courts rejected that claim and we did not think that it warranted a certificate of appealability.

Of course, if counsel had no other defense, failing to press even a marginal argument would take some explaining. But defense counsel did offer a fairly impressive argument based upon two interlocking claims: first, that Haines had reasonably felt threatened based on Busch's extraordinary conduct in suddenly running at him as well as other recent and prior events (e.g., the bar scuffle, the prior beating); and second, that Haines had warded off Busch without endangering him by displaying the rifle with no bullet in the chamber.

---

[3]Although she initially testified that her husband had not turned to point the gun at Busch until after Busch had fled, Haines' wife conceded shortly thereafter that Haines might have turned to face Busch as he was fleeing--and then further conceded that Haines might have backed away from the truck to face Busch with the gun before Busch fled, but that she could not be certain.

This line of attack on the prosecution's case may almost have worked; the jury's question suggests that it was in some doubt whether Busch had been endangered. Perhaps Haines' eccentricities, and the fact that when he was arrested his weapon did have a bullet in the chamber, counterbalanced the jury's doubt. But at least there was no testimony as to whether the round had been chambered when Busch was present; as to whether the weapon had been pointed at Busch, there was direct and unequivocal testimony from Meyer against Haines.

One might ask why, if it cost nothing, counsel did not also argue in the alternative Haines' current theory that he did not point the gun at Busch. There is more than one answer that counsel could reasonably give but two are obvious: to couple a weak argument with a stronger one may detract from the latter, and to contradict the direct and clear testimony of an eyewitness who was best positioned to observe a confrontation might weaken counsel's own credibility in selling his more plausible version of events.

By contrast, a harmless admission of what the prosecution seems to have proved anyway can bolster the defense's credibility. "Candor," said Emily Dickinson, "is the only wile." See Wilbur, Responses: Prose Pieces, 1953-1976 Expanded Edition 13 (1999). Certainly astute lawyers have operated on that premise for generations. Perhaps there was some cost to the concession; but a reasonable lawyer could easily think that cost was slight or

nominal and the benefit real.  This is just the kind of judgment that counsel is entitled to make, see Phoenix v. Matesanz, 233 F.3d 77, 81-82 (1st Cir. 2000), and the choice here was reasonable.

Haines' second line of attack on trial counsel is a claim that the latter failed to adequately advance a theory of self-defense.  Haines argues that his attorney called no witnesses in support of such a theory; failed to explain, emphasize, or even mention self-defense in his closing; and did not provide other evidence sufficient to support the defense.  But we cannot say that a claim of self-defense was not presented at all, or that counsel's failure to pursue it more explicitly was so serious as to deprive the defendant of a fair trial.

Defense counsel adduced evidence from both Meyer and Haines' wife showing that Busch had approached Haines quickly, yelling at him.  Haines' wife also testified that Haines had seemed fearful when he seized his weapon and that prior incidents in his campaigning had sharpened his fear.  The judge charged on self-defense.  And, in his closing argument, defense counsel argued that Haines had "protected [him]self by scaring someone" so he should not be convicted.  This is the gist of a self-defense argument on the facts of this case.

Why defense counsel did not happen to use the phrase "self-defense" in his closing is unclear; perhaps he deemed it more effective to stress the no-endangerment claim, providing the self-

defense theme in a lower key. Although it arguably does not matter in law that Busch was not in fact a threat but only misperceived as one, a jury might still feel that seizing a gun simply because someone is approaching quickly and shouting is not an objectively reasonable reaction. Anyway, the defense was presented.

Nor did defense counsel fail to provide some vital piece of available self-defense evidence. Apart from himself, Haines says that his counsel should have called an FBI agent to testify about an incident near the White House that Haines thinks reinforced his entitlement to feel endangered. But Haines' wife adverted to the incident; the FBI agent's testimony had been limited in pre-trial proceedings; and there is no indication that the agent would have added much, if anything, to the self-defense case.

Haines separately attacks the failure of counsel to argue on appeal that the district court erred in its jury instructions. Specifically, Haines attacks the district court's refusal in its instructions (twice as described above) to limit the prosecution to proving that Busch was the person endangered. This, says Haines, was a constructive amendment of the indictment and per se prejudicial, and so the failure to pursue the issue on appeal in state court was incompetent.

On this appeal, Haines makes no effort to show how New Hampshire law addresses the subject of constructive amendment, and

that law may well be unfriendly to a per se prejudice claim in this context. See State v. Elliott, 585 A.2d 304, 307 (N.H. 1990); see also 4 LaFave, Israel & King, Criminal Procedure § 19.5(b) at 792 (2d ed. 1999). Instead, Haines' brief assumes that the Constitution imposes on state prosecutions some version of the law prevailing in federal prosecutions--that a defendant cannot be convicted of a crime other than the one with which he is charged, even if the evidence shows that he is guilty of this other crime.[4]

Just how far this federal doctrine carries over to state prosecutions--where fair notice is required but not an indictment, see Apprendi v. New Jersey, 530 U.S. 466, 499 (2000)--has seemingly divided the circuits. Some federal case law assumes that it does, e.g., Gray v. Raines, 662 F.2d 569, 572 (9th Cir. 1981), some otherwise, e.g., Wilson v. Lindler, 995 F.2d 1256, 1264 (4th Cir.) (Widener, J., dissenting), adopted by 8 F.3d 173, 175 (4th Cir. 1993) (en banc), cert. denied, 510 U.S. 1131 (1994); there is little full-scale analysis, and this circuit has no clear-cut

---

[4]The case law, stemming from Stirone v. United States, 361 U.S. 212 (1960), has led a number of circuits, including ours, to adopt such a per se theory for certain deviations between what is charged in the indictment and what is proved at trial. See, e.g., United States v. Fisher, 3 F.3d 456, 462-63 (1st Cir. 1993).

-11-

position.[5] What is more, just _when_ a _per se_ rule applies even in federal prosecutions is a matter of debate and some confusion.

The rub is in the definitions. The titular "crime" for which a defendant is convicted must be the one for which he was indicted, but that is true in Haines' case. The precedents in federal case law _also_ require a reasonable congruence between the facts charged in the indictment and those proved at trial, _see_ 33 Geo. L.J. Ann. Rev. Crim. Proc. 270-73 (2004); but while a constructive amendment is not allowed, a "variance" between the facts charged and the facts proved is permissible, provided it is not prejudicial.

Save at either end of the spectrum, it is far from clear what distinguishes a permissible variance (as between facts charged and facts proved) from an impermissible constructive amendment. _See_ _United States_ v. _Weiss_, 752 F.2d 777, 787 (2d Cir.) ("considerable confusion"), _cert. denied_, 474 U.S. 944 (1985); _Hunter_ v. _New Mexico_, 916 F.2d 595, 599 (10th Cir. 1990) ("shadowy at best"), _cert. denied_, 500 U.S. 909 (1991). Some courts, including our own, have suggested that at least where the issue is confined to factual deviations, the question turns importantly on

---

[5]Our decision in _United States_ v. _Kelly_, 722 F.2d 873, 876 (1st Cir. 1983), _cert. denied_, 465 U.S. 1070 (1984), could be read as rejecting a _per se_ prejudice rule in state prosecutions but only by inference from some of its reasoning. _See also_ _Tarpley_ v. _Estelle_, 703 F.2d 157, 161 n.6 (5th Cir.) (noting but not answering the question), _cert. denied_, 464 U.S. 1002 (1983); _cf._ _Fawcett_ v. _Bablitch_, 962 F.2d 617, 618 (7th Cir. 1992).

whether the defendant has been <u>prejudicially</u> misled. <u>See</u> <u>United States</u> v. <u>Santa-Manzano</u>, 842 F.2d 1, 3 (1st Cir. 1988); <u>see also</u> <u>Lucas</u> v. <u>O'Dea</u>, 179 F.3d 412, 417 (6th Cir. 1999); <u>Hunter</u>, 916 F.2d at 599.

Finally, even if a federal <u>per se</u> test applied to New Hampshire prosecutions, it is debatable whether Haines' indictment <u>excluded</u> the possibility of proving that Haines had endangered bystanders. The indictment said that Haines had recklessly placed "another" in danger; the indictment did not in specific terms rule out proof that persons other than Busch had also been endangered. On some facts, a constructive amendment label is obvious; on others, such as the one before us, much less so.

Under these circumstances, we are unwilling to say either that counsel was incompetent in not making the constructive amendment argument in state court or that he would have prevailed if it had been made. It is not so much a matter of counsel exercising a reasonable choice among various arguments; rather, we do not credit the idea that competent counsel should inevitably have conceived of and credited a line of argument so abstruse, debatable and contingent. The standard for competence cannot be Herbert Wechsler.

Perhaps Haines' appellate counsel could have made a different claim, based not on constructive amendment but on the more straightforward argument that he was prejudicially deprived of

fair notice of the charges against him by the combined effect of the vague indictment, the prosecutor's opening argument and the trial judge's initial caution to the prosecutor when the latter began to stray toward an alternative theory of endangerment. If there had been proof of actual prejudice from this change of signals, perhaps it would have been incompetent not to press the claim on the state appeal.

But a due process argument based on lack of notice assumes a showing that trial counsel's presentation would have been different had the new theory emerged at an earlier stage. There is no basis for thinking that the prosecutor or the trial judge deliberately misled trial counsel. There is no indication that defense counsel had or could have procured any evidence to rebut the showing that there were others in the vicinity who might have been endangered. So there is no reason to think that the outcome on the state appeal would have been any different.

Haines unquestionably had bad luck. His case was the result of two different mistakes--Busch's misidentification of Haines and Haines' misperception of the threat Busch posed--and some juries would likely have acquitted. The real villain, one might conclude, was the mandatory sentencing law that punished a truant act as a major felony. But we cannot say that the representation Haines received fell below an objective standard of reasonableness, and that is the only issue before us.

-14-

<u>Affirmed</u>.