HOWARD, Circuit Judge,
dissenting.
The single issue raised in this case is whether Attorney Raimo acted incompetently at the point in time prior to trial when he chose not to hire an arson expert (or, perhaps, multiple arson experts, since the State called six experts at trial), and instead chose to focus his efforts on an identity defense — i.e., a defense directed at raising reasonable doubts in the jurors’ minds about whether Dugas was the arsonist. In concluding that Raimo’s pretrial decision not to hire an arson expert was incompetent — and in concomitantly holding that the New Hampshire Superior Court’s contrary determination was “not only incorrect but objectively unreasonable,” Rompilla v. Beard, — U.S. —, —, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005) — the majority portrays the decision as an unusual departure from professional norms, calling only for a modest and ease-specific corrective opinion unlikely to have repercussions beyond this case.
With respect, I think the majority opinion has broader implications. As the attorneys and judges, who work in the state and federal trial courts within our jurisdiction surely will notice, this case involves a professional decision of a type that is not only common and defensible, but necessary to the practical functioning of the criminal justice system. These professionals, who have more than an academic interest in our rulings, read our habeas and ineffective-assistance-of-counsel opinions with background knowledge of the deference federal habeas courts are to give state courts and trial counsel. They understand the broad discretion the Constitution necessarily confers on trial counsel to strategically allocate limited temporal and financial resources. They will appreciate that, even with the benefit of 20/20 hindsight, there is little reason to question whether the fire at the Dugas Superette was an arson. They will notice too that Raimo was supportably found to have deposed or interviewed all the State’s experts, toured *344 the arson scene, read up on arson, and conferred with fellow counsel prior to deciding not to hire an expert. In view of all this, they may well conclude that, under the logic of the majority’s analysis, the hiring (or appointment, in the case of indigent defendants) of consulting “counter” experts is constitutionally required in nearly all cases where the prosecution calls an expert to prove an element of its case. I write separately to express my disagreement with the majority’s ruling and my concern about its implications.
At the outset, there is a need to clarify the scope of this appeal. The majority opinion gives the impression that there is a second issue before us: whether Raimo was incompetent in promising the jury early in the trial that he would establish that the fire was “not arson,” but then failing to deliver on that promise. See, e.g., ante at 324, 328, 330. There is no such issue. First, petitioner has not made an “unfulfilled promise” argument, either before the state court or on collateral review. Second, petitioner did not make opening and closing arguments part of the habeas record, and there is no other evidence of Raimo having made such a promise.
The majority’s conclusion that there is an unfulfilled-promise issue in this case is based entirely on Raimo’s statement to the jury, prior to its taking a view of the fire scene, that “what we’re going to be asking ourselves during this trial is how this fire started and why.... I want to just make it clear ... where the State is bringing in all of these witnesses ... we think they’re wrong.” Ante at 323. Indeed, the majority goes so far as to suggest that this statement was a de facto admission to the jury by Raimo that “[mjueh of Dugas’s defense ... depended on Raimo’s ability to convince the jurors that the State’s experts might be wrong in concluding that the fire was arson.” Ante at 328. No such admission is made or implied by Raimo’s statement, which can as easily be taken to refer to the State’s allegation that Dugas was the arsonist — the allegation Raimo contested vigorously — as to the less — contested allegation that the fire was an arson.[38] And in any event, even if the statement is assumed to refer to the State’s anticipated arson evidence, it is hardly the sort of unusual “promise” from defense counsel that the majority makes it out to be.
The record does not contain evidence that Raimo promised to prove that the fire was not an arson. Nor does it suggest that Raimo told the jury that his defense depended on his ability to raise reasonable doubts whether the fire was an arson. Rather, the record reveals that Raimo made a somewhat modest effort through cross-examination to raise doubts about whether the State had proved arson beyond a reasonable doubt, but focused the majority of his attention and energy on *345 challenging the State’s logically unrelated identity case. The record does not bear out the contrary impression left by the sections of the majority opinion just discussed, and the majority’s many references to the “not arson” defense.
This leaves the question actually raised in petitioner’s brief: whether the state court unreasonably determined that Raimo acted competently at the point in time, prior to trial, when he decided not to hire an expert and instead to emphasize his identity defense. A review of how the state court disposed of this argument, conducted in the manner required by the ha-beas statutes, reveals that the answer is no.
Following an evidentiary hearing on Du-gas’s motion for a new trial, the state court issued an opinion rejecting the claim that Raimo’s pretrial decision-making was constitutionally flawed. See State v. Dugas, No. 98-S-1899, slip op. at 3-6 (N.H.Super.Ct. Aug. 12, 2002) (orders on motions for new trial and discovery). The court premised its holding on a finding that Rai-mo’s decision not to hire a consulting expert was tactical, and was made after a diligent and thorough investigation and consideration of the benefits and perils of a contrary path. Id. at 5-6. This finding essentially compelled the conclusion that Raimo’s decision did not constitute ineffec-five assistance of counsel. Id. (applying the standard by which the constitutionality of pretrial investigations are measured— that a strategic decision made after a thorough investigation is almost never incompetent — as articulated in Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The,majority says that this finding was sufficiently at odds with the record to meet the extraordinarily demanding requirement for upsetting a state court factual finding on federal collateral review: that the finding be “based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(2). But this is not so.
It is undisputed that Raimo, who at the time of trial had more than two decades of experience trying criminal cases, undertook an investigation prior to deciding whether to hire an arson expert. Raimo conceded on cross-examination by the State[39] that he toured the crime scene with his client and certain of the State’s experts, who explained to him their opinions that the physical evidence suggested arson; deposed or interviewed each of the State’s experts; concluded that the State’s experts were formidable and would impress the jury; independently educated himself on arson; and consulted with fel *346 low defense counsel about the likely efficacy of hiring his own expert under the circumstances.
Raimo also mentioned two additional concerns. First, he not only concluded that retaining his own expert would likely be a waste of time and money (presumably because the strength of the State’s evidence and experts led him to conclude that an expert good enough to go toe-to-toe with the State’s experts likely would concur in the conclusion that the fire was an arson), but he also took into account the fact that, in rare cases, hiring one’s own expert can have the effect of precluding an attorney from pursuing in good faith lines of argument designed to raise doubts about the State’s experts’ methods and conclusions. Second, he considered the risk that the state somehow would discover the potential expert’s opinion, which might further damage his client’s defense and limit his options. The majority, following the lead of the district court, emphasizes that a consulting expert need not be disclosed. But the more significant point is that, based on his pretrial investigation, Raimo had legitimate practical litigation concerns that consulting with an expert would result in a net loss to his client. In the specific circumstances of this case, these considerations, whatever their weight, were not wholly insubstantial. Or at the very least, the state court did not act unreasonably in so concluding.
In any event, the totality of this evidence amply supports the state court’s determination that Raimo’s decision not to retain an expert was tactical, considered, and based on a diligent and thorough investigation. The majority is led to conclude otherwise by means of what is, at bottom, a tautology: that, in an area involving scientific knowledge in which one is not well versed, one cannot have sufficiently investigated whether to hire a defense “counter” expert without retaining an expert to see whether an expert is needed. But this line of reasoning ignores the fact that experienced defense counsel and trial judges regularly must make difficult resource-allocation judgments prior to trial. The state court supportably found that Raimo, an experienced criminal trial attorney, took stock of the State’s evidence and multiple expert witnesses — all of whom quickly agreed that the fire was an arson for reasons that they explained to Raimo, presumably to his satisfaction — and concluded that the State would be able to put on an overwhelming case of arson; that he considered the possibility that hiring his own expert would be a waste of time and resources and conceivably could damage his client’s case; and that he therefore decided to invest his time (and Dugas’s money) in what he perceived to be a more fruitful defense theory: that the State could not prove beyond a reasonable doubt that his client was the arsonist because there were others who had the opportunity and motive to commit the crime. Perhaps these choices were unwise, but they simply cannot ground a ruling that the state court acted unreasonably in rejecting Dugas’s argument that Raimo “was not functioning as the ‘counsel’ guaranteed [Dugas] by the Sixth Amendment.” Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
To be sure, Raimo characterized his performance as inadequate on direct examination, and he attributed his decision not to hire an expert to overconfidence in his theory that, if the fire were an arson, somebody else was the perpetrator. This testimony forms the basis for much of the majority’s analysis. But as already noted, see supra note 2, client-friendly, self-incul-patory characterization and attribution testimony of this sort — hardly unprecedented in post-conviction proceedings — should have been disregarded because it is at odds with what the state court supportably *347 found. And in any event, as the majority recognizes, Raimo’s opinions about the law and his conduct have no bearing on our analysis. See Strickland, 466 U.S. at 688, 104 S.Ct. 2052 (emphasizing that counsel’s performance must fall below “an objective standard of reasonableness”) (emphasis supplied); see also Cofske v. United States, 290 F.3d 437, 444 (1st Cir.2002) (stating that, under Strickland, “as long as counsel performed as a competent lawyer would, his or her detailed subjective reasoning is beside the point”).
In sum, we should have upheld as a “[ jreasonable determination of the facts in light of the evidence presented” the state court’s finding that Raimo engaged in a thorough investigation of the pros and cons of hiring a consulting expert prior to making his decision. 28 U.S.C. § 2254(d)(2). And this should have led us to conclude that the state court’s denial of the new trial motion did not involve “an unreasonable application of’ Strickland. 28 U.S.C. § 2254(d)(1); see Strickland, 466 U.S. at 691, 104 S.Ct. 2052 (“strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable”).
A conclusion that the state court reasonably determined that Raimo provided Du-gas with competent representation would have negated any need to consider the issue of prejudice. But even if the issue of prejudice were to be properly reached, the analysis provided by the majority in support of its remand order is unpersuasive. As an initial matter, the “report” submitted in connection with Dugas’ summary judgment papers — the document which grounds the majority’s prejudice ruling — is not the sort of expert report contemplated by the Federal Rules. It is, in fact, only a brief, unsworn, unauthenticated letter from putative expert Michael K. Higgins, which in its most relevant section contains hearsay declarations about how the State may have violated certain laboratory standards in handling the arson evidence.[40] The fact that the Higgins letter does not constitute or contain admissible evidence, see, e.g., Gorski v. New Hampshire Dept. of Corrections, 290 F.3d 466, 475 (1st Cir.2002) (party opposing summary judgment must do so with admissible evidence),[41] and *348 that it otherwise does little to undermine the plentiful evidence that the fire was an arson — evidence, that ranges far beyond the evidence that the arsonist placed an accelerant on the papers that were ignited — should have led the court to conclude that a remand is unwarranted.
In conclusion, the majority states that its opinion is narrow and tailored to the facts of this case, and that it has not established a new rule of constitutional law requiring the retention or appointment of double-checking counter experts in the many contexts' — e.g., fingerprints, chemical analyses of narcotics, ballistics, origin of firearms — where prosecutors use experts to explain scientific or otherwise specialized evidence. But law is made less by what an opinion says than by' what the opinion causes practitioners to do as they engage in the predictive processes inherent in legal practice and reasoning. Cf. Holmes, The Path of the Law, 10 Harv. L.Rev. 457, 461 (1897). In view of the facts of this case, there is reason for concern that, notwithstanding the majority’s minimalist assurances, defense attorneys will read today’s opinion as embracing, at the least, a presumption that they must spend precious time and money on constitutionally required double, checks of most prosecution science experts — double checks that never before were required and reasonably may be eschewed in many circumstances. So too is there reason to fear that trial judges will read this opinion as constraining their discretion in deciding, in the case of indigent defendants, whether and when to expend limited public funds on court-appointed defense experts for purposes of double-checking the prosecution. And thus would the already slow and costly criminal trial process unnecessarily become slower and more costly.

. Indeed, a de facto admission by Raimo to the jury that he needed to establish a reasonable doubt whether the fire was an arson in order to secure an acquittal for his client, had it actually been made, would have been an inexplicable blunder — one that itself would raise Sixth Amendment concerns. The State's arson case was strong, its identity case was weaker, and the two were logically independent of one another, making it perfectly rational for Raimo to vigorously challenge the State's evidence that Dugas was the arsonist while at the same time leaving its evidence that the fire was an arson largely uncontested. Cf. Haines v. Risley, 412 F.3d 285, 289-90 (1st Cir.2005) (observing that trial counsel sometimes reasonably forego weaker alternative defense theories to avoid detracting from a primary defense theoiy or otherwise losing credibility with the jury). The majority's contrary argument — that Dugas’s overall prospects for an acquittal depended on Raimo’s ability to convince the jurors that the State's arson experts might be wrong, and that Rai-mo knew this, see ante at 327-28 is hard to fathom.

. Raimo was called as a witness by Dugas at the hearing on his motion for new trial. On direct examination, Raimo expressed an opinion that he had been constitutionally ineffective and made many of the "concessions” and "admissions” so heavily relied on by the majority. As commonly happens in post-conviction proceedings, Raimo fell on his sword for his former client. Thereafter, however, under cross-examination by the State, Raimo testified to the particulars of his investigation. These were the particulars that led the state trial judge to reject Raimo's self-denigrating testimony on direct and to conclude that the decision not to hire an expert was a tactical one made after a thorough investigation.
In crediting Raimo's direct testimony, the majority opinion does not correctly apply 28 U.S.C. § 2254(d)(2), which requires that we defer to the state court’s factual findings unless they were based on an unreasonable construction of the evidence. As explained momentarily, the state court’s findings that Raimo’s investigation was thorough and his decisions tactical are based on a reasonable construction of the evidence. We thus were obliged to reject those aspects of Raimo's testimony which were at odds with these conclusions. The majority has not done so.

. The most significant violation identified by Higgins in his letter is the State’s alleged abridgment of ASTM E-1387-95, Section 8.1.2.2., which, Higgins says, "requires the exact identification” of any flammable liquid identified at trial as an accelerant. (As the majority notes, the State introduced evidence at trial that there was an accelerant on the papers set ablaze in the Superette’s basement, but it did not identify the accelerant). It is worth noting, however, that the text of the relevant standard, submitted with Higgin's letter, does not explicitly call for such an identification. Instead, it merely states that “[ejveiy case file that includes a positive identification of an ignitable liquid or residue must include the standard chromatogram used to confirm the identification.” ASTM E-1387-95, Section 8.1.2.2.

. The majority suggests that the State "probably” has forfeited its right to challenge the admissibility of the Higgins letter. Ante note 23. The suggestion is incorrect. Because we should leave undisturbed final judgments that are demonstrably correct, it is long settled that we are free to affirm on any ground supported by the record — whether that ground has been argued by the respondent/appellee or not. See, e.g., Sammartano v. Palmas del Mar Properties, Inc., 161 F.3d 96, 97 n. 2 (1st Cir.1998). The imperative to leave substantively correct final judgments undisturbed is strong in all cases, but it is difficult to conceive of a situation where it would be stronger than where the final judgment under consideration is a state criminal conviction challenged in federal court on collateral review.
The majority further suggests that the inadmissibility of the Higgins report was, in effect, cured by his sworn testimony given in connection with Dugas's motion for discovery before the state trial court, which covered "the issues identified ... in his letter.” Ante *348 at note 23. But the transcript. of Higgins’ testimony shows little overlap with the "issues” identified in the letter and on which the majority relies in ordering a remand. At that hearing, Higgins merely testified on direct examination what he wanted in terms of discovery from the State and why; on cross-examination, he merely strived (unsuccessfully) to explain the unsupported characterization of the requirements of ASTM E-1387-95, Section 8.1.2.2., set forth in his unsworn letter.