Isoniel VELAZQUEZ

v.

Luis SPENCER.

Civil Action No. 06–11750–RGS.

United States District Court,
D. Massachusetts.

June 27, 2007.

Claudia Leis Bolgen, Bolgen & Bolgen, Woburn, MA, for Isoniel Velazquez.

David M. Lieber, Assistant Attorney General, Boston, MA, for Luis Spencer.

## MEMORANDUM AND ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

STEARNS, District Judge.

I agree with Magistrate Judge Bowler that no *Apprendi* error infected petitioner's sentence (as the Massachusetts Appeals Court explicitly held). Malice, in the context of assault with intent to murder, means simply the absence of justification, excuse, or mitigation. A jury's finding of a specific intent to kill necessarily incorporates a finding of malice where there is no evidence that would support a conviction of the lesser-included offense of assault with intent to kill. *See Commonwealth v. Nardone,* 406 Mass. 123, 132, 546 N.E.2d 359 (1989) (if the jury finds a specific intent to kill, "the requisite finding of malice necessarily exists").[1] I further agree with Magistrate Judge Bowler that no prejudicial error resulted from counsel's performance at trial. While a defendant is entitled under Massachusetts law to an instruction (if requested) regarding a possible honest mistake on the part of an identifying witness, petitioner's theory of the case was not that the principal witness was mistaken, but that he was lying. A request for an instruction on the lesser-included offense would have been inconsistent with (and harmful to) the core theory of the defense. Finally, I agree with the Magistrate Judge that the rejection by the Appeals Court of petitioner's argument that he was prejudiced by the impeachment (with pretrial silence) of his alibi witness was not objectively unreasonable. *See Woodford v. Visciotti,* 537 U.S. 19, 27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002). The Recommendation of the Magistrate Judge is therefore *ADOPTED*. The Petition is ordered *DISMISSED* with prejudice and the case will be closed.

SO ORDERED.

## REPORT AND RECOMMENDATION RE: RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE PETITION FOR HABEAS CORPUS (DOCKET ENTRY # 7)

BOWLER, United States Magistrate Judge.

Respondent Luis Spencer ("respondent"), Superintendent of the Massachusetts Correctional Institution ("MCI–Norfolk") in Norfolk, Massachusetts, seeks dismissal of the claims in the above styled petition for writ of habeas corpus filed by

---

1. As both the Appeals Court and the Magistrate Judge observed, petitioner's defense at trial was misidentification, not mitigating circumstances. *Commonwealth v. Velazquez,* 61 Mass.App.Ct. 667, 674–675, 814 N.E.2d 356 (2004); Report and Recommendation, at 16 n. 5.

petitioner Isoniel Velazquez ("petitioner"), an inmate at MCI–Norfolk. Respondent submits that the relevant state court's determinations were not contrary to or an unreasonable application of clearly established law as determined by the Supreme Court under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d) ("section 2254").

Petitioner attacks his 2002 conviction for armed assault with intent to murder rendered in the Massachusetts Superior Court (Hampden County) ("the trial court") on the following grounds: (1) the trial judge failed to instruct the jury on the element of malice which requires a reversal because malice is an essential element of armed assault with intent to murder; and (2) trial counsel provided ineffective assistance by failing to object to the jury instruction omitting the element of malice, failing to object to the prosecution's improper impeachment of a defense alibi witness and failing to request an honestly mistaken identification instruction. (Docket Entry # 1).

■ Even if an evidentiary hearing is not barred under section 2254(e)(2) of the AEDPA,[2] petitioner has no right to an evidentiary hearing under the pre-AEDPA standard assuming *arguendo* its applicability after the AEDPA's enactment. *See Edwards v. Murphy*, 96 F.Supp.2d 31, 49–50 (D.Mass.2000) (setting forth relevant standards and recognizing dispute as to whether standard for conducting evidentiary hearing set forth in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), modified by *Keeney v. Tamayo-*

*Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), remains applicable after AEDPA's enactment); *see also Fryar v. Bissonnette*, 113 F.Supp.2d 175, 179–180 (D.Mass.2000) (the petitioner did not negligently fail to develop record under section 2254(e)(2) and could, therefore, only obtain hearing if he satisfied *Townsend* standard); *Marshall v. Hendricks*, 103 F.Supp.2d 749, 770 (D.N.J.2000) (same). The content of the state court record, including the trial transcripts, relevant state court briefs and court rulings, is sufficiently complete and not in dispute.

## PROCEDURAL BACKGROUND

On July 17, 2001, a Hampden County grand jury indicted petitioner for the armed assault with intent to murder, assault and battery with a dangerous weapon, and illegal possession of a firearm and ammunition. On September 11, 2002, a jury convicted him on all counts and the trial judge subsequently sentenced him to a term of imprisonment of 18 to 20 years for assault with intent to murder, followed by a ten year term of probation for assault and battery with a dangerous weapon, and a two year house of corrections sentence to be served concurrently with the prison sentence for the remaining convictions.

Petitioner appealed the conviction on September 18, 2002, raising the same grounds alleged in the instant petition. The Massachusetts Appeals Court ("the appeals court") affirmed the conviction on August 20, 2004, and denied petitioner's subsequent request for a rehearing on

**2.** Section 2254(e)(2) creates a bar to conducting an evidentiary hearing in federal court. If the petitioner fails to develop the facts within the meaning of the first clause of section 2254(e)(2), this court cannot hold an evidentiary hearing unless the petitioner "meets the other conditions of § 2254(e)(2)." *Williams v. Taylor*, 529 U.S. 420, 430, 120

S.Ct. 1479, 146 L.Ed.2d 435 (2000). Under the first clause of section 2254(e)(2), "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. at 432, 120 S.Ct. 1479.

February 2, 2005. *See Commonwealth v. Velazquez,* 61 Mass.App.Ct. 667, 814 N.E.2d 356, 364 (2004) (affirming conviction); (Docket Entry # 8, Ex. A, App. 7a) (denying rehearing). The Massachusetts Supreme Judicial Court denied further appellate review on March 2, 2005, and the United States Supreme Court denied certiorari on October 3, 2005. *See Commonwealth v. Velazquez,* 443 Mass. 1105, 823 N.E.2d 782 (2005) (denying further review); *Velazquez v. Massachusetts,* 546 U.S. 850, 126 S.Ct. 107, 163 L.Ed.2d 120 (2005) (denying certiorari). The instant petition followed on September 28, 2006.

## FACTUAL BACKGROUND

State court factual findings are presumed to be correct and it is petitioner's burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Knight v. Spencer,* 447 F.3d 6, 12 (1st Cir.2006). Petitioner does not rebut the following facts set forth by the appeals court:

> On June 14, 2001, Gerardo Orbe helped his friend, Waldemar Torres, move from an apartment on Kibbe Street to an apartment on Hancock Street in the city of Springfield. At about 1:30 p.m., after making several trips between the two locations with Torres's motor vehicle, Orbe returned to the Kibbe Street area. As Orbe drove down Kibbe Street, he saw a red car parked in front of Torres's apartment. A young woman, who was standing on the sidewalk next to the motor vehicle, was talking to the driver. Orbe drove passed [sic] Torres's apartment. While stopped at a stop sign, Orbe looked in his rearview mirror and saw the woman point toward the car he was driving. Sensing that something was afoot, Orbe headed toward the police station.

The red car followed Orbe and pulled alongside his vehicle, into the lane for oncoming traffic. The passenger in the front seat was hanging out of the window on the passenger side of the vehicle with a gun in his hand. The passenger said something, which Orbe did not understand, and then began to shoot at Orbe. The passenger fired several shots in Orbe's direction. Seven or eight bullets struck Orbe's vehicle before a final shot struck Orbe. Orbe pulled his vehicle to the side of the road, and the red car stopped in front of it. After shots were fired in Orbe's direction, the red car drove off. Orbe then exited his vehicle and collapsed on the sidewalk. Officer Donald Quinn was the first officer to arrive on the scene. Before being taken to Baystate Medical Center, Orbe, who was in a great deal of pain, was only able to tell Officer Quinn that a red Dodge Stealth had been involved.

Shortly after the incident, off duty police Officer Joselito Lozada heard the report of shots having been fired near his location. The vehicle involved in the incident was described as a red sports car. As Officer Lozada continued driving on Chestnut Street, he glanced in his rearview mirror and saw a red sports car, a red Dodge Stealth, speeding in and out of traffic, in the same direction he was traveling. By the time Officer Lozada stopped at the next red light, the vehicle was directly behind him. Officer Lozada saw four people in the car, but focused his attention on the driver, who was desperately trying to maneuver the vehicle around Officer Lozada's car. Officer Lozada described the driver's facial expression as one that plainly indicated "something was wrong." When the vehicle passed his car, Officer Lozada drove to a nearby relative's house, telephoned the police, and reported his observations.

Officer Lozada went to work later that evening and was informed that the driver of the red sports car was in custody. Officer Lozada looked at the man, Omar Santiago, and confirmed that he was the operator of the red sports car. The red sports car belonged to Maximina Santiago, Santiago's aunt.

Orbe was released from the hospital five days later, having had his spleen removed as a result of the shooting. About two weeks after the incident, Orbe selected the [petitioner's] picture from a photographic array and identified him as the shooter. Orbe had seen the [petitioner] on several prior occasions, but did not know him personally.

Santiago testified pursuant to a written agreement with the district attorney's office in which he promised to testify at the [petitioner's] trial in exchange for consideration on his pending charges related to the same incident. At trial, Santiago admitted that he had driven the vehicle from which the [petitioner] had fired the shots at Orbe. Santiago claimed, however, that he had no idea that the defendant intended to shoot Orbe.

The defense was misidentification and alibi. The night before this incident, someone had fired numerous shots into the [petitioner's] home. There was testimony at trial that suggested a fight had taken place at a local barbershop between the [petitioner's] brother, Jose Nieves, and Torres and that the altercation was one of a series of events that had precipitated a round of ammunition being fired into the [petitioner's] home, as well as the shooting of Orbe. In any event, the [petitioner] testified that after the shots were fired into his home, he immediately left Springfield to stay with his brother, Hugo Nieves, in Hartford. Hugo Nieves and Maximina Santiago testified for the defense and corroborated the [petitioner's] alibi.

*Commonwealth v. Velazquez,* 814 N.E.2d at 358–59.

## DISCUSSION

### I. *Section 2254(d) Review*

The AEDPA establishes "two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the first category, a federal court may grant the writ if the relevant state court proceeding resulted in a decision that was " 'contrary to clearly established Federal law, as determined by the Supreme Court of the United States.' " *Williams v. Taylor,* 529 U.S. at 404, 120 S.Ct. 1495 (quoting statute with ellipses omitted). Under the second category, the federal court may grant the writ if the relevant state court decision " 'involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.' " *Williams v. Taylor,* 529 U.S. at 405, 120 S.Ct. 1495 (quoting statute with ellipses omitted). Clearly established law refers to the holdings of the Supreme Court, as opposed to dicta, in effect at the time of the relevant state court decision. *Williams v. Taylor,* 529 U.S. at 411, 120 S.Ct. 1495.

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court if the decision "applied a rule that contradicts the governing law set forth in the [Supreme] Court's cases." *Mountjoy v. Warden, New Hampshire State Prison,* 245 F.3d 31, 35 (1st Cir.2001). A state court decision is also "contrary to the [Supreme] Court's clearly established precedent if the state court confronts a set of facts that are

materially indistinguishable from a decision of the [Supreme] Court and 'nevertheless arrives at a result different from [Supreme Court] precedent.' " *Hurtado v. Tucker*, 245 F.3d 7, 15 (1st Cir.2001) (internal brackets omitted). In other words, a state court decision is contrary to "clearly established federal law if it applies a legal rule that contradicts" the "prior holdings" of the Supreme Court, "or if it reaches a different result from" a Supreme Court case "despite confronting indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000); *accord Williams v. Taylor*, 529 U.S. at 405–06, 120 S.Ct. 1495 (contrary decision occurs where state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent").

Under the second prong, the court determines whether the state court decision was an unreasonable application of federal law as determined by the Supreme Court. *Mountjoy v. Warden, New Hampshire State Prison*, 245 F.3d at 35. The inquiry is an objective one, *see McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir.2002), insofar as the decision "must have been 'objectively unreasonable.' " *Wiggins v. Smith*, 539 U.S. 510, 520–22, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

■ In "making the 'unreasonable application' inquiry," a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 29 U.S. at 365, 4 Pet. 349. An "unreasonable application" of clearly established federal law as determined by the Supreme Court occurs where " 'the state court identifies the correct governing legal rule from [the Supreme Court's] cases but

unreasonably applies it to the facts of the particular state prisoner's case,' or 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.' " *Mountjoy v. Warden, New Hampshire State Prison*, 245 F.3d at 35. Thus, a federal court may allow habeas relief where the state court misapplies "a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.' " *Wiggins v. Smith*, 539 U.S. at 520, 123 S.Ct. 2527 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003)).

■ An objectively unreasonable application of the relevant jurisprudence, however, differs from an incorrect or erroneous application of such jurisprudence. *Williams v. Taylor*, 529 U.S. at 365, 120 S.Ct. 1495; *accord Wiggins v. Smith*, 539 U.S. at 520, 123 S.Ct. 2527 ("state court's decision must have been more than incorrect or erroneous"). Under the unreasonable application prong, the "habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. at 365, 120 S.Ct. 1495; *see Mountjoy v. Warden, New Hampshire State Prison*, 245 F.3d at 35 (distinguishing unreasonable application from incorrect application). As clarified by the First Circuit, " 'some increment of incorrectness beyond error is required.' " *McCambridge v. Hall*, 303 F.3d at 36. Although the increment need not be great, "it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal

court." *McCambridge v. Hall*, 303 F.3d at 36.

## II. *Ground One*

In ground one, petitioner submits that the appeals court violated his Sixth Amendment rights by failing to find that the trial judge erred in not instructing the jury that it must decide whether petitioner did or did not possess malice at the time of the crime.[3] (Docket Entry # 1). Petitioner argues that the omission of malice from the jury instructions prohibited the jury from finding a factual element of the crime charged. He contends that the omission meant the difference between a ten year sentence for a lesser included offense and a 20 year sentence for the greater offense. (Docket Entry # 3). Petitioner takes the position that the appeals court decision was contrary to and an unreasonable application of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

The appeals court identified the correct holding in *Apprendi. See Velazquez*, 814 N.E.2d at 360 (identifying *Apprendi* rule). The issue therefore devolves into an assessment of the reasonableness of the decision.

The Supreme Court in *Apprendi* held that, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348; *see also United States v. Booker*, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (reaffirming *Apprendi* and holding facts supporting sentence beyond maximum authorized by facts established in jury verdict must be proved to jury beyond reasonable doubt). For *Apprendi* purposes, the " 'statutory maximum' ... is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Thus, where an authorized increase in a defendant's punishment is made "contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Ring v. Arizona*, 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

Unlike *Apprendi*, 530 U.S. at 476, 120

---

**3.** The trial judge instructed the jury as follows:

> Now, let me begin by explaining to you the elements of the crime of assault with the intent to murder. In this case Mr. Velazquez [petitioner] is charged with assault with intent to murder. And our state legislature has specifically defined assault with intent to murder in a statute which is located at [Massachusetts] General Laws Chapter 265, Section 18. And that provides, in part, "[w]hoever assaults another with intent to murder shall be punished." And I should add that it is an armed assault with which Mr. Velazquez has been charged and so the statute involves an additional element, which is, "[w]hoever commits an armed assault on another with intent to commit murder, shall be punished."

> So in order to find [petitioner] guilty of the offense with which he's been charged, which is armed assault with intent to murder, the Commonwealth must prove the following elements to you beyond any reasonable doubt: First, that [petitioner] assaulted a person, in this case, Mr. Orbe. The second element the Commonwealth must prove beyond a reasonable doubt was that the assault was committed by means of a dangerous weapon. And, finally, the Commonwealth must prove beyond a reasonable doubt that at the time [petitioner] possessed a specific or actual intent to cause the death of the person assaulted.

(Docket Entry # 9, Ex. 4, pp. 29–30).

S.Ct. 2348, the statute [4] under which petitioner was convicted does not provide for an increased sentence based upon a judge's, as opposed to the jury's, finding of any fact.[5] *Apprendi* is therefore inapposite. *Cf. Apprendi*, 530 U.S. at 476, 120 S.Ct. 2348 (holding increased sentence based on judge's finding of fact unconstitutional).

The Supreme Court's decision in *Blakely* is similarly distinguishable. The *Blakely* court struck down a Washington state law allowing an increase in the maximum sentence if a judge found aggravating facts by a preponderance of the evidence. *See Blakely*, 542 U.S. at 301–303, 124 S.Ct. 2531 (facts increasing maximum sentence must be found by jury under reasonable doubt standard). Here, the trial judge did not make a finding of malice based upon a preponderance of the evidence. Rather, the trial judge failed to instruct the jury that if it found the specific intent to kill, malice necessarily exists. *Velazquez*, 814 N.E.2d at 361.

This case is also distinct from the circumstances in *Booker*. The Supreme Court in *Booker* held that an increased sentence based upon a post trial sentencing hearing in which a judge found additional facts under a preponderance of the evidence standard violated the rule in *Apprendi*. *See Booker*, 543 U.S. at 244, 125 S.Ct. 738. Here there was no such sentencing hearing and the trial judge did not

rely on facts found after the jury verdict to impose petitioner's sentence.

Indeed, a close examination of the appeals court's decision confirms it was not an unreasonable application of *Apprendi* and its progeny. The appeals court identified the elements of assault with intent to murder as assault, specific intent to kill and malice. *Velazquez*, 814 N.E.2d at 360. Relying on *Commonwealth v. Henson*, 394 Mass. 584, 476 N.E.2d 947 (1985), the appeals court further explained that malice in the context of assault with intent to murder "means *only* absence of justification, excuse, and mitigation." *Id.* Mitigating circumstances therefore "merely serve to reduce the charge from assault with intent to murder to the lesser included offense of assault with intent to kill." *Velazquez*, 814 N.E.2d at 361 (explaining role of mitigation as defined in *Commonwealth v. Nardone*, 406 Mass. 123, 546 N.E.2d 359 (1989)). Consequently, in the absence of evidence of mitigating circumstances, as reasonably explained by the appeals court, the burden of establishing malice is satisfied by proving specific intent to kill and the judge should instruct the jury that, if it finds the specific intent, malice exists. *Id.* at 361–62 (stating "there is no accompanying requirement to prove the absence of mitigating circumstances as part of the proof of malice").

The appeals court did not find any evidence supporting a theory of justification, excuse or mitigation.[6] *Id.* Petitioner based

---

4. Massachusetts General Laws chapter 265, section 18(b), provides:
 Whoever, being armed with a dangerous weapon, assaults another with intent to rob or murder shall be punished by imprisonment in the state prison for not more than twenty years. Whoever, being armed with a firearm, shotgun, rifle, machine gun or assault weapon assaults another with intent to rob or murder shall be punished by imprisonment in state prison for not less than five years and not more than 20 years.

5. The appeals court correctly explained, by way of a footnote, that "because the statute under which [petitioner] was convicted, [Massachusetts General Laws chapter] 265, [section] 18(b), does not provide for an enhanced sentence beyond the statutory maximum, the *Apprendi* case is inapplicable." *Velazquez*, 814 N.E.2d at 362 n. 4.

6. The appeals court noted that:
 Even viewing the evidence in the light most favorable to the defendant, there was noth-

his defense on theories of misidentification and alibi. *Id.* at 363. He did not suggest then, nor does he suggest now, that any evidence exists supporting a theory of justification, excuse or mitigation. Consequently, since under state law malice necessarily exists if the jury finds the specific intent to kill, the appeals court did not act unreasonably in finding the trial judge's instructions, explaining that the jury must find intent to kill, but not specifically referencing malice, to be erroneous or in violation of the rule in *Apprendi.* Even if *Apprendi* was applicable, the jury found all facts required for the crime charged in the indictment beyond a reasonable doubt. *See United States v. Eirby,* 262 F.3d 31, 36–37 (1st Cir.2001) (noting *Apprendi* requires facts increasing maximum sentence be charged in indictment and found by jury beyond reasonable doubt).

Accordingly, the appeals court's decision does not reflect an unreasonable application of *Apprendi.* In fact, the decision correctly applied the holdings of *Apprendi* and its progeny.

Additionally, even if it is determined that an *Apprendi* error occurred, petitioner's argument still fails because the trial judge's failure to submit the element of malice to the jury would survive harmless error analysis. *See United States v. Bailey,* 270 F.3d 83, 89 (1st Cir.2001) (unless *Apprendi* error is harmless, sentence in excess of statutory maximum must be set aside). The test for determining whether a constitutional error is harmless is whether the court concludes it is "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87

S.Ct. 824, 17 L.Ed.2d 705 (1967); *see also Washington v. Recuenco,* — U.S. —, 126 S.Ct. 2546, 2551–52, 165 L.Ed.2d 466 (2006) (failure to submit element to jury not structural and subject to harmless error analysis); *Neder v. United States,* 527 U.S. 1, 15–16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (omission of element subject to harmless error analysis).

Here, petitioner did not offer any evidence of mitigating circumstances to contest the existence of malice should the jury find the specific intent to kill. Thus, the trial judge's failure to instruct the jury on malice did not influence the verdict rendered. *See Neder,* 527 U.S. at 15–17, 119 S.Ct. 1827 (holding harmless error occurred where judge omitted element of materiality from jury instruction because "omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error").

## III. *Ground Two*

In ground two, petitioner submits that the appeals court unreasonably applied the principles of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by failing to find ineffective assistance of trial counsel. (Docket Entry # 1, p. 7). As facts supporting a finding of ineffective assistance of counsel, petitioner cites the following actions of trial counsel: failure to object to the omission of malice from the jury instruction; failure to object to the prosecutor's impeachment of an alibi witness and the use of such impeachment in closing argument; failure to object to the trial judge's decision not to include a lesser included offense instruction; and

ing in the record to support any one of these theories ... The lack of a motive, however, runs counter to the theories of justification, excuse, and mitigation, each of which requires some evidence of a motive

or a reason for the killing ... Therefore, drawing the jury's attention to these concepts would only have undermined the defense theory of the case.

*Velazquez,* 814 N.E.2d at 363.

failure to request an honest mistaken identification instruction. (Docket Entry # 1, p. 7).

The well established test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), governs Sixth Amendment ineffective assistance of counsel claims and constitutes clearly established law for purposes of section 2254(d). *See Ouber v. Guarino,* 293 F.3d 19, 26 (1st Cir.2002) (*"Strickland* principles for deciding ineffective assistance of counsel claims are 'clearly established' for purposes of the AEDPA"). To succeed under *Strickland,* petitioner must demonstrate that his trial counsel's performance was constitutionally deficient and concomitant prejudice. *United States v. McGill,* 11 F.3d 223, 226 (1st Cir.1993); *accord Phoenix v. Matesanz,* 233 F.3d 77, 81 (1st Cir.2000) (quoting *Williams v. Taylor,* 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

An attorney's performance is deficient where it is "so inferior as to be objectively unreasonable." *United States v. McGill,* 11 F.3d at 226. Moreover, " '[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Lopez–Nieves v. United States,* 917 F.2d 645, 649 (1st Cir. 1990) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). An attorney nevertheless renders ineffective assistance where he fails to "raise an important, obvious defense without any imaginable strategic or tactical reason for the omission." *Prou v. United States,* 199 F.3d 37, 48 (1st Cir. 1999) (failure of attorney to raise government's untimely filing of information seeking sentence enhancement was deficient inasmuch as the claim "was a clear winner and presenting it would have risked nothing").

Under *Strickland's* prejudice prong, prejudice results if there is a reasonable possibility that, but for counsel's unprofessional error, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. 2052; *accord Phoenix v. Matesanz,* 233 F.3d at 81. Stated otherwise, petitioner bears the burden of showing that "his attorney's parlous conduct may have altered the outcome of the case." *Ouber v. Guarino,* 293 F.3d at 25.

The appeals court addressed each of petitioner's arguments individually and determined that better work on behalf of petitioner's trial counsel would not have "accomplished something material for the defense." *Velazquez,* 814 N.E.2d at 364. While not specifically citing state law defining the standard for ineffective assistance of counsel, it is evident that the appeals court followed the standard set forth in *Commonwealth v. Saferian,* 366 Mass. 89, 315 N.E.2d 878, 883 (1974) (whether counsel's performance deprived defendant of substantial ground of defense). Furthermore, the standard set forth in *Saferian* is the equivalent of *Strickland* for AEDPA purposes. *See Castillo v. Matesanz,* 348 F.3d 1, 13 (1st Cir.2003) (*Saferian* standard "functional equivalent" of *Strickland* ). Accordingly, the issue devolves into an assessment of the reasonableness of the appeal court's decision.

A. *Failure to Object to the Omission of Malice from the Jury Instructions*

■ The appeals court rejected petitioner's first argument because, on the basis of its reasonable interpretation of state law discussed *supra,* it did not find the omission of malice from the jury instructions to be error. *Velazquez,* 814 N.E.2d at 363. In light of the appeal court's reasonable application of state law, trial counsel's fail-

ure to object to the omission does not amount to ineffective assistance because the trial judge committed no error to support the objection. *See Knight v. Spencer,* 447 F.3d 6, 16 (1st Cir.2006) (finding ineffective assistance of counsel not supported by failure to object to alleged errors of law either nonprejudicial or nonexistent). Furthermore, the most an objection by counsel could have garnered petitioner is an instruction to the jury that if it finds specific intent to kill, the element of malice necessarily exists. *See Commonwealth v. Nardone,* 406 Mass. 123, 546 N.E.2d 359, 365 (1989). Considering the lack of evidence of mitigating circumstances presented by petitioner and the jury's finding of specific intent to kill, the appeals court's rejection of petitioner's argument does not reflect an unreasonable application of *Strickland.*

### B. *Failure to Object to Impeachment of Alibi Witness*

The appeals court rejected petitioner's argument that failure to object to the prosecutor's impeachment of an alibi witness supported a finding of ineffective assistance because, even assuming trial counsel committed error, it could not be shown "better work would have accomplished something material for the [petitioner]." *Velazquez,* 814 N.E.2d at 364. As discussed earlier, the appeals court's determination reflects an application of the state law standard for ineffective assistance equivalent to the standard set forth in *Strickland. See Castillo,* 348 F.3d at 13 (equating state and *Strickland* standards of ineffective assistance); *see also Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (the defendant must show reasonable probability but for counsel's errors result would be different).

Under state law, the testimony of relatives is given less weight than that of unrelated witnesses. *See Commonwealth v. Roberts,* 433 Mass. 45, 740 N.E.2d 176, 181 (2000) (testimony of blood relative inherently less credible than that of other witnesses). As a result, the appeals court did not unreasonably determine that the testimony of petitioner's alibi witness, his brother, was "inherently less credible than the testimony of other witnesses." *Velazquez,* 814 N.E.2d at 364. Additionally, strong evidence existed supporting petitioner's guilt. As the appeals court reasonably noted, this evidence included two witnesses, the victim and codefendant all identifying the petitioner as the shooter, as well as evidence suggesting petitioner had a motive to harm the victim, mistaking him for a man with whom he was feuding. *Velazquez,* 814 N.E.2d at 364; *see Woodford v. Visciotti,* 537 U.S. 19, 26–27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (state supreme court's assessment that other evidence outweighed prejudice from trial counsel's assumed errors not objectively unreasonable).

Furthermore, *Washington v. Hofbauer,* 228 F.3d 689 (6th Cir.2000), cited by petitioner in support of his argument is readily distinguishable. The Sixth Circuit in *Washington* found ineffective assistance where defense counsel failed to object to the prosecutor's impeachment of the defendant and the subsequent use of such impeachment in closing argument. *Washington,* 228 F.3d at 704. The court emphasized that the prosecutor committed plain and prejudicial error, using the impeachment to establish the defendant's bad character fit the alleged crime. *Id.*

■ Here, the appeals court did not find the prosecutor's impeachment of a witness, concerning the witness' pretrial silence, to be unduly prejudicial. *Velazquez,* 814 N.E.2d at 363–64. Consequently, considering the weight afforded the testimony of petitioner's alibi witness and the other evidence supporting guilt, the appeals court's rejection of petitioner's argument was not

objectively unreasonable under the *Strickland* standard. *See Woodford*, 537 U.S. at 27, 123 S.Ct. 357 (habeas scheme leaves ineffective assistance of counsel for state court judgment and authorizes intervention only if judgment is objectively unreasonable).

### C. *Failure to Request an Honest But Mistaken Identification Instruction*

 State law "compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it." *Commonwealth v. Pressley*, 390 Mass. 617, 457 N.E.2d 1119, 1120 (1983). Petitioner based his challenge to the witnesses' identifications on their veracity, however the evidence did not raise the possibility the witnesses made any mistake. *Velazquez*, 814 N.E.2d at 364. Having conducted an independent review, this court agrees with the appeals court. The trial judge thoroughly instructed the jury on the government's burden of proof as well as issues of alibi and identification. Additionally, the appeals court reasonably found other evidence supporting petitioner's guilt. (Docket Entry # 9, Ex. 4, pp 28–29); *see United States v. Kavanagh*, 572 F.2d 9, 12–13 (1st Cir.1978) (failure to give mistaken identification charge not prejudicial where jury instructions fully covered reasonable doubt and burden of proof and government's case did not hinge on possible mistaken identifications alone). Accordingly, it was not an unreasonable application of the *Strickland* standard for the appeals court to conclude that the failure to request an honest mistaken identification instruction did not amount to ineffective assistance of counsel.

### D. *Failure to Object to the Trial Judge's Decision Not to Include an Instruction on the Lesser Included Offense*

 Under state law, an instruction on a lesser included offense is only proper when there is evidence supporting a finding of the lesser offense. *See Commonwealth v. Egerton*, 396 Mass. 499, 504, 487 N.E.2d 481, 485 (1986) (lesser included offense instruction should not be given where evidence does not allow finding of such offense). In discussing the jury instructions with the trial judge, trial counsel acknowledged that the defense was one of alibi and a lesser included offense may not be applicable given the lack of mitigating circumstances evidence. (Docket Entry # 9, Ex. 4, p. 4). No evidence existed to support a theory of mitigation, excuse or justification warranting a finding of the lesser included offense. *See generally Haines v. Risley*, 412 F.3d 285, 291–2 (1st Cir.2005) (rejecting due process argument based on lack of notice where prosecutor and trial judge did not deliberately mislead and no evidence suggested different outcome). Thus, the appeals court reasonably and correctly determined that it would have been error for the trial judge to have given an instruction on the lesser included offense. Accordingly, the appeals court's rejection of the ineffective assistance of counsel claim, based upon trial counsel's failure to object to the absence of the instruction was not an unreasonable application *Strickland*.

In light of the appeals court's reasonable rejections of petitioner's arguments for ineffective assistance of counsel, the cumulative effect of petitioner's arguments cannot be said to amount to ineffective assistance of counsel under *Strickland*. *See United States v. Franklin*, 321 F.3d 1231, 1241 n. 4 (9th Cir.2003) (no individual errors equals no cumulative error); *Woodford*, 537 U.S. at 27, 123 S.Ct. 357 (federal habeas scheme leaves ineffective assistance of counsel for state court judgment and authorizes intervention only if judgment is objectively unreasonable).

182

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[7] that the request to dismiss the petition in the memorandum of opposition (Docket Entry # 7) be **ALLOWED** and that the petition (Docket Entry # 1) be **DISMISSED.**

May 14, 2007.

7. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).